2020 IL App (1st) 172249-U

THIRD DIVISION
September 30, 2020

No. 1-17-2249

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 5535 |
| | ) | |
| MICHAEL D. JOHNSON, | ) | Honorable |
| | ) | Allen F. Murphy, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1 *Held*: Second-stage dismissal of defendant's postconviction petition claiming ineffective assistance of trial counsel for counsel's alleged failure to discuss the consequences of defendant's guilty plea on pending motion to suppress affirmed where defendant's claims were refuted by the record and where defendant failed to make a substantial showing of counsel's deficient performance or prejudice arising therefrom.

¶ 2 Defendant, Michael D. Johnson, was charged by indictment with two counts of aggravated driving under the influence of alcohol, two counts of aggravated fleeing or attempting to elude a peace officer, and one count of leaving the scene of a motor vehicle accident involving death in

connection with the February 12, 2013, death of Jennifer Mitchell. Defendant entered into a negotiated plea agreement in which he agreed to plead guilty to leaving the scene of a motor vehicle accident involving death and aggravated driving under the influence causing death, in exchange for the State's agreement to drop the other charges and recommended sentences of, respectively, four and three years' imprisonment. Defendant was sentenced pursuant to that plea, did not move to withdraw that plea, and did not file a direct appeal. This appeal arises out of the second stage dismissal of defendant's postconviction petition, alleging ineffective assistance of counsel based on counsel's alleged failure to discuss the consequences of withdrawing a pending motion to suppress his blood alcohol concentration (BAC) test results.

¶ 3    The record shows that on January 11, 2016, prior to defendant's guilty plea, defense counsel filed a motion to exclude the BAC test results performed on defendant. In the motion, defendant alleged that, while at the hospital following a car accident, he was placed in restraints and injected with medicines used to treat psychosis, delirium, and anxiety, and his blood was illegally drawn without a warrant and without his consent. The motion was set for an evidentiary hearing on May 7, 2014.

¶ 4    On the scheduled hearing date, the case was continued by agreement to July 8, 2014. On July 8, defense counsel informed the court that, due to an apparent miscommunication with an assistant state's attorney (ASA), she had been under the impression that the case was not going to be proceeding on that date. Defense counsel requested a continuance to subpoena the doctors who administered medication to defendant prior to the blood draw. The ASA answered ready for the hearing, stating that the State Troopers were present in court, and offered to stipulate that "this was a nonconsensual blood draw." The court then asked the parties if they wanted to "talk" to determine whether they could "stipulate to something" that would allow the hearing to move forward.

Defense counsel agreed to pass the case to "see if [the ASA] w[ould] agree to exactly what I would like *** to be known."

¶ 5    The case subsequently was recalled, and defense counsel told the court that the parties had not reached an agreement. Defense counsel requested that the case be continued for a full evidentiary hearing, and the matter was set, by agreement, for September 5, 2014.

¶ 6    On September 5, the case was again continued by agreement to October 31, 2014.

¶ 7    On October 31, defense counsel stated that the emergency room doctors were not available and were not present in court. Defense counsel then advised the court: "The State has -- there's also been an offer made, and I want to go –." The parties then discussed scheduling for the next court date, and the ASA confirmed that the next appearance would be "not for hearing" and "just for status." The matter was set, by agreement for November 24, 2014.

¶ 8    On November 24, 2014, the ASA, defense counsel, and defendant were present in court. The parties advised the court that they had reached an agreement in which defendant agreed to plead guilty to Count 1, leaving the scene of an accident involving death, and Count 2, aggravated driving under the influence involving death, in exchange for mandatory consecutive sentences of, respectively, four years' and three years' imprisonment, as well as the State's agreement to *nolle prosse* the remaining three counts.

¶ 9    The court addressed defendant and asked if it was correct that he wished to change his plea based on the agreement he had with the State. Defendant stated, "Correct, your Honor."

¶ 10    The court then asked defendant, "How do you plead to leaving the scene of a motor vehicle accident involving a death. Guilty or not guilty?" Defendant responded, "Guilty." The court asked defendant, "And how do you plead to aggravated driving under the influence of alcohol involving a death, guilty or not guilty?" Defendant responded, "Guilty."

¶ 11    The court admonished defendant regarding the nature of the charges and possible penalties, including that, if convicted on Count 1, defendant faced a minimum of four and maximum of 15 years' imprisonment, and on Count 2, defendant faced a minimum of three and maximum of seven years' imprisonment. Defendant stated that he understood the nature of the charges and the possible penalties. The admonishments continued:

> COURT: Do you know what a jury trial is, Mr. Johnson?
>
> DEFENDANT: Yes, your Honor.
>
> COURT: Is this your signature here?
>
> DEFENDANT: Correct, yes.
>
> COURT: Do you understand by signing this document, you are waiving your right to a jury trial?
>
> DEFENDANT: Yes, your Honor.
>
> COURT: There will be no trial whatsoever, not even before me. You will not get to see or hear witnesses testify against you, cross examine those witnesses, present any evidence on your own behalf, testify on your own behalf and you're waiving your right to force the State to prove you guilty beyond a reasonable doubt. Do you understand that?
>
> DEFENDANT: Yes, your Honor.
>
> COURT: Has anyone threatened or promised you anything other than this agreement?
>
> DEFENDANT: No one has offered me or promised me, nothing like that.
>
> COURT: No one has promised you anything or threatened you in any way to get you to plead guilty today?

DEFENDANT: No, your Honor.

COURT: You're pleading guilty of your own free will?

DEFENDANT: Correct, your Honor.

COURT: Do you understand that I am not part of the conversation between your attorney and the State's Attorney and therefore after I hear the facts of the case and any aggravation and criminal background, I may not go along with the agreement, do you understand that?

DEFENDANT: Yes, your Honor.

COURT: Do you still persist in your plea of guilty?

DEFENDANT: Correct.

¶ 12    The court then asked the State if there was a factual basis for the plea.  The State responded:

"Yes, Judge. If Trooper Surz *** were called to testify, she would testify that she was called to the scene of an accident on February 12, 2013 just after 12:30 a.m. where it was determined Jennifer Mitchell had fallen out of a motor vehicle. That motor vehicle had left the scene. This all occurred on Interstate I-94 near 154 Street.

The troopers were directed to the kind of vehicle that was involved in having Miss Mitchell ejected. *** [Trooper Surz] would testify that the Defendant fled, continuing on I-94. He drove erratically and crossed lanes of traffic. At one point, he continued for over eight miles on the tollway where he crashed into another vehicle and the troopers were able to apprehend him.

*** [A]t the time his blood alcohol level was over .08, the legal limit in this case. We would also introduce medical evidence that would show that Miss

5

Mitchell died as a result of injuries she received when she was ejected from the defendant's vehicle and hit the pavement and was subsequently run over by another vehicle."

¶ 13    Defense counsel stipulated to the above factual basis.

¶ 14    The court found that defendant understood the nature of the charges and the possible penalties, that defendant was pleading guilty freely and voluntarily, and that there was a factual basis for the plea. The court accepted defendant's guilty plea and made a finding of guilty.

¶ 15    At sentencing, both the ASA and defense counsel rested on the agreement. Defendant made the following statement in allocution:

"I would like to say that I apologize to the family and to the People of the State of Illinois and I would like to also say that the People of the State of Illinois and the family of Mrs. Jennifer Mitchell, I hope that they can one day find it in their hearts to forgive me and allow God to continue to work in their lives as well as in mine."

¶ 16    The court asked defendant if he had anything else to say, and defendant stated,

"I would also like the record to know that I thank [defense counsel] and I thank the State of Illinois for assisting me and also doing what's necessary to make certain that the people in the state get exactly the justice that they either seek or wanted or to come to an agreement of."

¶ 17    The court then told defendant that "part of the healing process for the victim's family is being here in court listening to you accept responsibility for your actions. No matter what happens here today, no matter what I say, no matter what you do or [defense counsel] or [the ASA], their loved one will not be brought back to them. And I'm sure that hearing you accept responsibility may bring some closure for them but nothing that happens here today will make them whole ever

again. You know that?" Defendant responded, "Yes, your Honor." The court then sentenced defendant in accordance with the plea agreement, to consecutive four- and three-year sentences on, respectively, Counts 1 and 2.

¶ 18    Defendant did not file a motion to withdraw his guilty plea, or a direct appeal.

¶ 19    On January 11, 2016, defendant filed a *pro se* postconviction petition. In that petition, defendant maintained, first, that the circuit court erred in denying his *pro se* motion—which was not named or further described—and that the denial created a conflict of interest. Second, defendant argued that counsel performed unreasonably in "induc[ing] [defendant] to plead guilty prematurely before the suppression motion was ruled upon," denying him his due process right to develop a defense. Finally, defendant asserted that counsel "rendered ineffective performance" for failing to "inform defendant" or "present to the State a stipulated plea by allowing the defendant to continue to pursue his suppression motion argument."

¶ 20    On March 18, 2016, the circuit court docketed defendant's postconviction petition. There is no record of the circuit court having made a first stage determination in relation to defendant's petition.

¶ 21    Counsel was appointed for defendant, and on April 29, 2016, an assistant public defender appeared on defendant's behalf.  The case was continued several times so that the public defender's office could familiarize themselves with the matter, and on November 4, 2016, the assistant public defender informed the court that he believed defendant would like to represent himself in the postconviction proceedings. Defendant confirmed that was correct, and the court admonished defendant that he was entitled to representation by the Cook County Public Defender's Office on his postconviction petition, but that he also had the right to represent himself. Defendant stated that he understood, and that his decision to represent himself was "an intelligently made waiver."

In response to questions from the court, defendant stated that he had attended the University of Missouri through junior year "before this case" where he studied journalism and communications, and that, although he had not represented himself in a criminal matter, he had represented himself in "civil procedure." Defendant confirmed that he still desired to represent himself.

¶ 22    The court asked defendant if he was going to file a new petition for postconviction relief, and defendant answered, "Yes." The court granted defendant leave to represent himself and to file an amended petition, and allowed the Public Defender's Office to withdraw. Defendant agreed to file his amended petition by January 20, 2017, and the court set the matter for status on the same date.

¶ 23    On January 12, 2017, defendant filed an amended petition for postconviction relief. In addition to the three issues raised in his initial petition, defendant also contended, among other things, that the court erred in accepting his plea of guilty "despite his claim of innocence and in the absence of an adequate factual basis for his plea." Defendant contended that his blood and urine samples were ordered by an Illinois State Police officer "against defendant's will" and without "obtain[ing] a search warrant, constitut[ing] an unlawful search and seizure in violation of defendant's 4th, 5th, 8th, and 14th Amendment Constitutional rights." Defendant specifically alleged that he "was unconscious at the time the blood was withdrawn [*sic*] and hence had no opportunity to object to the procedure." Defendant further claimed that the indictment failed to include "impairment as an element of that offense," and failed to prove that his impairment was a proximate cause of the death.

¶ 24    On April 28, 2017, the State filed a motion to dismiss defendant's postconviction petition, alleging generally that defendant's claims were waived based on defendant's voluntary guilty plea, belied by the record, and meritless. Specifically, regarding defendant's claim of ineffective

assistance, the State contended that the claim should be dismissed because the record showed that counsel had ensured that defendant's guilty plea was voluntary and intelligently made, and accordingly, counsel's performance did not fall below the objective standard of reasonableness. The State also pointed out that petitioner made comments during the plea thanking counsel for her efforts on his behalf.

¶ 25    On June 2, 2017, the court held a second-stage hearing on defendant's amended post-conviction petition and the State's motion to dismiss. Defendant, *pro se*, argued that, had he "been better informed," he would "not have pled guilty and *** would have insisted on going to trial." Defendant stated that Mitchell "committed suicide," and that her "death was the result of her own action, opening her passenger door and jumping into traffic." The court asked defendant why he apologized to Mitchell's family during the sentencing hearing if she committed suicide, and defendant responded:

> "Because I was there. I apologized to her family for any act that my person being there (inaudible) had an effect on this individual's decision making. If I'm there then I'm partly responsible for us drinking and not making a better decision to not drink and drive the vehicle. I don't have nothing to do with a woman jumping out of her vehicle on a public highway. I can't control a person jumping out of a vehicle."

¶ 26    Defendant asked the court to view a video of the incident, stating, "You could see the lady jumped, fell, whatever, out of the car, due to her door being mismalfactured [*sic*] or something wrong [with] it. I'm not the cause. *** She wasn't pushed. I had nothing to do with her falling out. Was I under the influence? Yes, I was. .086. We went to a bowling alley and had drinks. Was I voluntarily under the influence? Yes. But was I voluntarily over the influence? No."

¶ 27    Regarding defendant's ineffective assistance of counsel claim, defendant claimed that counsel performed deficiently "by failing to pursue [the] already filed motion to exclude purported blood and urinalysis." He further contended that the motion would have been "fruitful" and that "but for *** counsel's errors, [he] would not have pled guilty and would have insisted on going to trial."

¶ 28    The State responded that there was no evidence to support defendant's claim that Mitchell committed suicide. Regarding defendant's ineffective assistance claim, the State argued that, despite more recent developments in the law on nonconsensual blood and urine tests without a warrant, the motion was unlikely to have been successful at the time it was filed. Additionally, the "crux of the matter" was that defendant pled guilty, and therefore all nonjurisdictional errors and irregularities were waived.  The State further argued that the record showed that defendant was properly admonished, and pled guilty voluntarily and intelligently.

¶ 29    The circuit court stated that the issue was whether there was any substantial constitutional deprivation of defendant's rights during the plea hearing. The court stated that it was "very clear from the transcript of the plea that every requirement of Illinois Supreme Court Rule 402 was abided by." The court found that defendant was aware of the charges and possible penalties, and that a factual basis existed for the plea. The court further noted that defendant apologized to Mitchell's family, and thanked defense counsel for her services. The court thus found that defendant's claims of ineffective assistance of counsel were refuted by the record. The court acknowledged that there had been "very recent developments in DUI cases regarding the seizure of bodily fluids," and that defendant may "regret pleading guilty because of the recent case law," but after defendant's guilty plea, "those Fourth Amendment challenges are waived." Accordingly, the court granted the State's motion to dismiss the postconviction petition.

¶ 30    Defendant timely filed a notice of appeal from that judgment on June 28, 2017. See Ill. Sup. Ct. R. 373 (eff. Nov. 1, 2016).

¶ 31    In this  court, defendant, through counsel, the Office of the State Appellate Defender, claims that the court erred in dismissing his postconviction petition at the second stage of proceedings because he made a substantial showing that trial counsel was ineffective for "failing to discuss with him a pending meritorious motion to suppress his blood alcohol level, where [defendant]'s blood was drawn in violation of his Fourth Amendment rights, and the consequences of withdrawing this motion" before defendant entered into his guilty plea. Defendant further contends that counsel withdrew the motion "without [defendant]'s full understanding of the merits of the motion or that a guilty plea would waive the suppression issue." Defendant contends that counsel's failure rendered his guilty plea involuntary.

¶ 32    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a method for an individual seeking to challenge a conviction by alleging that it was the result of a substantial denial of federal or state constitutional rights, or both. "The purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *People v. English*, 2013 IL 112890, ¶ 22. Postconviction proceedings are not a continuation of, or an appeal from, the original case. *People v. Flowers*, 208 Ill. 2d 291, 303 (2003). Rather, a postconviction petition is a collateral attack upon the prior conviction and affords only limited review of constitutional claims not presented at trial. *People v. Greer*, 212 Ill. 2d 192, 203 (2004).

¶ 33    The Act provides a three-stage process for adjudicating petitions. *People v. Cotto*, 2016 IL 119006, ¶ 26; *People v. Beaman*, 229 Ill. 2d 56, 71 (2008). At the first stage, the trial court must review the postconviction petition and determine whether "the petition is frivolous or is patently

without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). If the petition is not dismissed within 90 days at the first stage, counsel is appointed and the petition advances to the second stage, during which the court may appoint counsel for an indigent defendant, who may amend the petition as necessary, and the State may file a motion to dismiss or an answer to the petition . 725 ILCS 5/122-2.1(a); 122-2.1(b); 122-4; 122-5 (West 2016)). At this stage, the defendant "bears the burden of making a substantial showing of a constitutional violation." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). "[A]ll well-pleaded facts that are not positively rebutted by the trial record are to be taken as true," (*id.*) and dismissal of the petition is warranted only when the allegations in the petition, liberally construed in light of the original trial record, fail to make a substantial showing of a constitutional violation (*People v. Hall*, 217 Ill. 2d 324, 334 (2005)). If such a showing is made, then the petition proceeds to the third stage, where the trial court conducts an evidentiary hearing on the merits of the petition. 725 ILCS 5/122-6 (West 2016).

¶ 34    Where, as here, we are reviewing the dismissal of defendant's postconviction petition prior to a third stage evidentiary hearing, we review that dismissal *de novo*. *Pendleton*, 223 Ill. 2d at 473; *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 35    The sixth amendment guarantees a criminal defendant the right to effective assistance of trial counsel at all critical stages of criminal proceedings, including the entry of a guilty plea. *People v. Brown*, 2017 IL 121681, ¶¶ 25.

¶ 36    A claim that a defendant was denied his constitutional right to effective assistance of counsel generally is governed by the familiar two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) but for counsel's errors,

there is a reasonable probability that the result of the trial would have been different. *Id.*; *People v. Hughes*, 2012 IL 112817, ¶ 44.

¶ 37    The *Strickland* standard also applies to a claim that trial counsel was ineffective during the guilty-plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first prong of *Strickland* remains the same for guilty-plea defendants, but for purposes of the second prong, a guilty-plea defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58–59; *People v. Hall*, 217 Ill. 2d 324, 335 (2005). Because both *Strickland* prongs must be shown, this court need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of any alleged deficiencies. *People v. Pugh*, 157 Ill. 2d 1, 15 (1993). If defendant fails to make a substantial showing that he was prejudiced by his counsel's performance, then we can dispose of the ineffective assistance claim on prejudice alone. *People v. Wilson*, 2014 IL App (1st) 113570, ¶ 46.

¶ 38    In this case, defendant entered a negotiated plea of guilty, which generally "waives all non-jurisdictional errors or irregularities," including constitutional errors. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004); see also *Tollet v. Henderson*, 411 U.S. 258, 267 (1973) ("a guilty plea represents a break in the chain of events which has preceded it in the criminal process," and when a "defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *People v. Smith*, 383 Ill. App. 3d 1078, 1085-86 (2008) ("All the errors that defendant contends her trial counsel committed relate to claims she voluntarily relinquished when she pled guilty, and we will not consider her attorney's alleged deficient performance on issues that defendant waived.").

¶ 39    Thus, generally, after a defendant pleads guilty, he may not raise claims of deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *People v. Ivy*, 313 Ill. App. 3d 1011, 1017 (2000). Instead, defendant may only attack the voluntary and intelligent character of the guilty plea by showing that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Tollett*, 411 U.S. at 266-67.

¶ 40    Before analyzing defendant's claim under *Strickland*, we note that defendant's claim regarding the motion to suppress the BAC test results is relevant to, at most, one of the two offenses to which he pleaded guilty. As stated above, defendant entered a negotiated guilty plea to two offenses: leaving the scene of a motor vehicle accident involving death, and aggravated driving under the influence causing death. Because the offense of leaving the scene of a motor vehicle accident involving death has no requirement that defendant be under the influence or have a minimum BAC (625 ILCS 5/11-401(b) (West 2012)), the motion regarding defendant's BAC test results would not have had any effect on defendant's conviction or plea for that offense.

¶ 41    Regarding defendant's guilty plea to aggravated driving under the influence causing death, this court finds defendant's contention that he was unaware of the consequences of withdrawing his motion to suppress the BAC test results to be rebutted by the record. The record shows that defendant was properly admonished, and he indicated his understanding that, by pleading guilty, there would "be no trial whatsoever," and that defendant was waiving his right to "present any evidence on [his] own behalf," and his "right to force the State to prove [him] guilty beyond a reasonable doubt." Where defendant acknowledged his understanding that there would be no trial, and that the State would no longer be required to prove his guilt, he cannot now claim ignorance as to the consequences of his guilty plea. In light of these admonishments, and defendant's

acknowledgment of his understanding of these principles, we find defendant's claim to be rebutted by the record.

¶ 42     Moreover, as stated above, to succeed on a claim of ineffective assistance under *Strickland*, a defendant must show that counsel's representation fell below an objective standard of reasonableness. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance (*Strickland,* 466 U.S. at 689), and the decision whether to pursue a motion to suppress is generally "a matter of trial strategy, which is entitled to great deference" (*People v. Bew,* 228 Ill. 2d 122, 128 (2008)). A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Hughes*, 2012 IL 112817, ¶ 61.

¶ 43     The record in this case illustrates that counsel made the kind of strategic choice contemplated by *Strickland* as within the wide range of reasonable professional assistance. As part of the plea negotiations, counsel was required to make a choice between advising defendant to continue pursuing his motion to suppress the BAC test results, or advising him to accept a plea deal in exchange for the State dropping three counts, and recommending minimum sentences on the remaining two counts. See *People v. Watkins*, 2019 IL App (4th) 180605, ¶ 39, *reh'g denied* (Nov. 6, 2019). Particularly given the uncertainty of defendant's success on the motion to suppress, we cannot find defendant to have made a substantial showing that counsel's performance was deficient. See *People v. Armer*, 2014 IL App (5th) 130342 ("In determining whether exigent circumstances justified [the warrantless drawing of the defendant's blood], the totality of the circumstances must be evaluated on a case-by-case basis."); *People v. Eubanks*, 2019 IL 123525 ¶¶ 59; 69 (holding that statute authorizing the warrantless testing of blood and urine where police officer had probable cause to believe that a defendant had committed DUI causing death or

personal injury to another was not facially unconstitutional. The statute was "*valid* in *almost all*

its applications," (emphasis in original), but would not apply in certain "unusual cases").

¶ 44   Nonetheless, even assuming that counsel performed deficiently, defendant's claim fails

because he has not made a substantial showing of prejudice. In order to show prejudice under

*Strickland*, a guilty-plea defendant "must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*,

474 U.S. at 59.  "A conclusory allegation that a defendant would not have pleaded guilty and would

have demanded a trial is insufficient to establish prejudice" for purposes of an ineffective

assistance claim. *People v. Valdez*, 2016 IL 119860, ¶ 29. Such an allegation must be accompanied

by either a claim of innocence or the articulation of a plausible defense which could have been

raised at trial. *Hall*, 217 Ill. 2d at 335-36. Determining whether "counsel's deficient representation

caused the defendant to plead guilty depends in large part on predicting whether the defendant

likely would have been successful at trial." *Id*. at 336. To obtain relief, a defendant " 'must

convince the court that a decision to reject the plea bargain would have been rational under the

circumstances.' " *Hughes*, 2012 IL 112817, ¶ 65 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372

(2010)); *Valdez*, 2016 IL 119860, ¶ 29.

¶ 45   Regarding defendant's conviction for aggravated driving under the influence causing

death, we note that defendant did not make a claim of actual innocence in his postconviction

petition or in this appeal, and the record would refute such a claim. The record shows that

defendant was properly admonished, and entered a knowing and voluntary guilty plea to

aggravated driving under the influence causing death. Moreover, at sentencing, defendant

apologized to the victim's family, and thanked both defense counsel and the ASA. Later, when

defendant denied responsibility for the victim's death, his denial was based on his claim that the

16

victim had committed suicide. In explaining why he had previously apologized to the victim's family, defendant explicitly took responsibility for "us drinking and not making a better decision to not drink and drive the vehicle." He also admitted to being "under the influence" and having a BAC of ".086."

¶ 46    Defendant has also articulated no plausible defense. In representing himself in the postconviction proceedings below, the only conceivable defense to the charges that defendant articulated was that the victim, who was a passenger in the car defendant was driving, committed suicide by "opening her passenger door and jumping into traffic." At the same time, however, defendant stated that the victim had "f[a]ll[en], whatever, out of the car, due to her door being mismalfactured [*sic*] or something wrong [with] it." In either circumstance, defendant maintained that he was "not the cause."

¶ 47    Other than defendant's conclusory allegations, defendant has pointed to nothing that would show that the victim either committed suicide or fell from the vehicle due to a malfunction in the door, and, not surprisingly, defendant has apparently abandoned such claims on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *People v. Guest*, 166 Ill.2d 381, 414 (1995); *People v. Enis*, 194 Ill. 2d 361, 376 (2000) (a reviewing court will "consider only those claims that defendant raised on appeal"). Nonetheless, even if defendant could show either of the above scenarios, such evidence would not be a defense to "leaving the scene of a motor vehicle accident involving death," to which defendant pled guilty. See 625 ILCS 5/11-401(b) (West 2012).

¶ 48    Moreover, to the extent that defendant's claim is that his motion to suppress was meritorious, and that would qualify as a plausible defense to the offense of aggravated driving under the influence involving death, section 11-501.2(c)(2) of the Illinois Vehicle Code allows warrantless testing of blood, breath, and urine when "a law enforcement officer has probable cause

17

to believe that a motor vehicle driven by or in actual physical control of a person under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof has caused the death or personal injury to another." Our supreme court considered a challenge to this statute in *People v. Eubanks*, 2019 IL 123525, ¶¶ 59-60, and ultimately concluded that it was facially constitutional. In so holding, the court considered the recent U.S. Supreme Court case of *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2537 (2019), which explained that an "exigency exists when (1) [blood alcohol content (BAC) ] evidence is dissipating and (2) some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application."

¶ 49    Our supreme court explained that a warrantless blood draw pursuant to section 11-501.2(c)(2) generally would not violate the fourth amendment, because

> "section 11-501.2(c)(2) is a codified exigency. It allows a warrantless blood draw only when the police have probable cause to believe that a person has driven or been in actual physical control of a vehicle while under the influence of drugs or alcohol and that person has caused death or injury to another person. *** [T]he statute is specifically designed to operate when exigent circumstances are present. The statute sets forth precisely the type of exigency that *Mitchell* said would 'almost always' allow a warrantless blood draw." *Eubanks*, 2019 IL 123525, ¶ 60.

¶ 50    Although the court found section 11-501.2(c)(2) to be "*valid* in *almost all* its applications," (*id.*, ¶ 59 (emphasis in original)), the court concluded that there could be certain "unusual cases" in which a warrantless blood draw pursuant to that section would violate the fourth amendment (*id.*, ¶ 69). The supreme court further found that the *Eubanks* defendant presented such an "unusual case," concluding that the statute was unconstitutional as applied to him. The court specifically

18

noted that the defendant was arrested around 9 p.m., had been left for long periods of time at the police station in between speaking to police officers, who, "did not appear to be acting with any urgency to get the testing done." *Id.*, ¶¶ 67-68. The defendant refused to take a breath test around midnight, and nearly three hours later, the officers finally took defendant to the hospital to give blood and urine samples. *Id.*, ¶67. The blood sample was not collected until 4:10 a.m., and the urine sample was not taken until 5:20. *Id.* The court observed that "a full seven hours passed between the time of the defendant's arrest and the time of his blood sample, and nearly 8.5 hours passed before he gave the urine sample." *Id.*, ¶ 68. In those specific circumstances, the court found that the record did "not show sufficient exigent circumstances to dispense with a warrant. For these reasons, the general rule set forth in section 11-501.2(c)(2) does not apply here, and the statute is unconstitutional as applied to defendant's case." *Id.*

¶ 51    In this case, by contrast, the record contains a police report indicating that defendant was arrested on February 12, 2013, at 12:55 a.m., he was transferred to the hospital, and his blood was drawn at 4:42 a.m. There is no indication in the record, like in *Eubanks*, that defendant was first transported to the police station or that he was left alone for long periods of time, and the time between defendant's arrest and the BAC testing was less than four hours, compared to the seven hours that elapsed in *Eubanks*. Accordingly, we find it unlikely that defendant would be successful in an "as applied" challenge to section 11-501.2(c)(2), like the defendant in *Eubanks*.

¶ 52    Defendant, however, contends that *People v. Armer,* 2014 IL App (5th) 130342 dictates that no exigent circumstances existed to support a warrantless blood draw in this case. In *Armer*, the defendant was arrested for driving under the influence of alcohol after a single-vehicle accident, in which the vehicle had rolled over into a ditch. *Id.*, ¶¶ 3, 14. The defendant sustained injuries, and was taken to the hospital by ambulance. *Id.*, ¶ 3. The defendant fell asleep at the

hospital while a deputy was speaking to him, and the deputy was unable to rouse him. *Id.*, ¶ 4. Thereafter, the deputy requested the hospital staff draw defendant's blood, and they did so, revealing a BAC of .159. *Id.* On appeal, the fifth district appellate court concluded that no exigent circumstances existed to support the blood draw, where three officers were able to assist with the investigation and there was no evidence that those officers would have "faced an unreasonable delay in securing a warrant." *Id.*, ¶ 14. Initially, we question the continuing validity of *Armer* in light of *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2531 (2019), in which the U.S. Supreme Court held that the exigent-circumstances exception to Fourth Amendment's warrant requirement "almost always permits a blood test without a warrant" where a driver suspected of drunk driving is unconscious and therefore cannot be given a breath test. Nonetheless, even if *Armer* is still good law, it is clearly and significantly distinguishable from the instant case, where *Armer* involved a single vehicle accident that did not cause "death or injury to another person," and thus, the "codified exigency" under section 11-501.2(c)(2) was not applicable in that case.

¶ 53   In light of this record, defendant cannot convince a court " 'that a decision to reject the plea bargain would have been rational under the circumstances.' " *Hughes*, 2012 IL 112817, ¶ 65 (quoting *Padilla*, 559 U.S. 372; *Valdez*, 2016 IL 119860, ¶ 29). Accordingly, defendant has not made a substantial showing of prejudice by showing that, but for counsel's allegedly deficient performance, defendant would have rejected the plea agreement.

¶ 54   Defendant has therefore failed to make a substantial showing of ineffective assistance of counsel based on counsel's failure to discuss the pending motion to suppress the BAC test results with him prior to his guilty plea. Accordingly, defendant does not state a claim of ineffective assistance of counsel sufficient to warrant a third stage hearing, and the circuit court properly dismissed defendant's postconviction petition at the second stage of proceedings.

¶ 55 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 56 Affirmed.