2019 IL App (4th) 180605
NOS. 4-18-0605 & 4-18-0606 cons.

FILED
October 16, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| KOREY WATKINS, | ) | Nos. 17CF698, 16CF1698 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith, Jr., |
| | ) | Judge Presiding. |

---

JUSTICE CAVANAGH delivered the judgment of the court, with opinion.
Justices Steigmann and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1    In Macon County case Nos. 17-CF-698 and 16-CF-1698, defendant, Korey Watkins, is serving two consecutive six-year terms of imprisonment for unlawful possession of a controlled substance with the intent to deliver it (720 ILCS 570/401(c)(2) (West 2016); 730 ILCS 5/5-5-3(c)(2)(D) (West 2016)). About six months after these sentences were imposed, he moved to withdraw his guilty pleas in both cases. Simultaneously, in Macon County case No. 17-CF-698, he petitioned for postconviction relief. The circuit court struck the postplea motions as untimely and summarily dismissed the postconviction petition.

¶ 2    We affirm the judgments because (1) defendant has withdrawn his challenge to the dismissal of the motions to withdraw his guilty pleas and (2) the postconviction petition is frivolous and patently without merit.

¶ 3                                    I. BACKGROUND

¶ 4                        A. The Negotiated Guilty Pleas (October 20, 2017)

¶ 5             In a hearing on October 20, 2017, defendant appeared with his defense counsel. The circuit court said, "[Defense counsel], let's start with the 16 case. What are we going to do there?" Defense counsel answered:

> "[DEFENSE COUNSEL]: Judge, it's going to be a plea to additional Count 4.
>
>                                    * * *
>
> THE COURT: *** Why don't we show additional Count 4 on file alleging the offense of unlawful possession of a controlled substance with intent to deliver between 5 and 15 grams, a Class 1 felony."

¶ 6             After defense counsel waived the reading of this additional count, the circuit court asked him, "And then what are the terms in that case?" He answered:

> "[DEFENSE COUNSEL]: The terms in that case are that [defendant] would be sentenced to a term of six years in the Illinois Department of Corrections. It is mandatory consecutive to 2017-CF-698.
>
> THE COURT: So it's six years and a two-year term of mandatory supervised release?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.
>
> THE COURT: It is consecutive. What's his credit on this case?
>
> [DEFENSE COUNSEL]: Judge, his credit would be from 11/27/16 to 11/28/16.
>
>                                    * * *

THE COURT: And it's a Class 1, so a $2,000 drug treatment assessment, $100 lab fee.

[DEFENSE COUNSEL]: Yes.

THE COURT: And what's the street?

[DEFENSE COUNSEL]: $650 street value fine, Judge.

THE COURT: 650, and there would be a $10 incarceration credit. Any other terms in that case, [defense counsel]?

[DEFENSE COUNSEL]: No, Judge. ***

&ast; &ast; &ast;

THE COURT: *** So then the 17 case, what are the terms there, [defense counsel?]

[DEFENSE COUNSEL]: Judge, in the 17 case, the plea will be to Count 2, unlawful possession of a controlled substance with intent to deliver, a Class 1.

THE COURT: Okay. The terms there, [defense counsel]?

[DEFENSE COUNSEL]: He would serve a sentence of six years in the Illinois Department of Corrections.

THE COURT: Okay. Six and two. Again, it's consecutive. What's his credit there, [defense counsel]?

[DEFENSE COUNSEL]: Judge, his credit is May 12, 2017, through May 16, 2017.

THE COURT: And, again, a $2,000 assessment?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: $100 lab fee?

- 3 -

[DEFENSE COUNSEL]: Yes.

THE COURT: And street value, [defense counsel]?

[DEFENSE COUNSEL]: $640 street value fine.

THE COURT: All other counts to be dismissed?

[DEFENSE COUNSEL]: Yes, Judge.

THE COURT: Any other terms?

[DEFENSE COUNSEL]: No, Judge.

* * *

THE COURT: So I think I understand. [Defendant], do you understand the terms of your plea agreement?

THE DEFENDANT: Yes, I do.

THE COURT: And is that what you're willing to do at this time?

THE DEFENDANT: Yes.

THE COURT: And do you understand each of these cases are actually Class 1 felonies. You would not be eligible for a sentence of conditional discharge or probation based on the weight of the substance involved because, I think, each weight is more than 5 grams.

And if you were sentenced to the Illinois Department of Corrections, the minimum term is four years, the maximum term is fifteen years. That has to be followed by a two-year term of mandatory supervised release. And the second case must be served consecutive to the first case. Do you understand those things?

THE DEFENDANT: Yes.

- 4 -

THE COURT: Do you understand that in entering a plea of guilty, that you're giving up certain constitutional rights, that would include your right to plead not guilty and to have a trial, either a jury trial or a bench trial. You're giving up your right to confront and cross-examine your accusers. And by entering a guilty plea or pleas, you're agreeing that the State can prove each of these counts against you beyond a reasonable doubt. Do you understand those things?

THE DEFENDANT: Yes.

THE COURT: We call this a fully negotiated resolution or plea agreement. Anybody force you into this deal?

THE DEFENDANT: No.

THE COURT: Anybody make you any promises, other than the terms of your plea agreement?

THE DEFENDANT: No.

THE COURT: Do you agree this Court did not initiate or force you into this plea agreement?

* * *

THE DEFENDANT: Yes.

THE COURT: Do you have any additional questions at this time?

THE DEFENDANT: No, Your Honor, I don't."

¶ 7 Next, at the circuit court's request, the prosecutor gave factual bases for the two cases.

¶ 8 Finding the factual bases to be sufficient and the guilty pleas to be knowingly, voluntarily, and intelligently made, the circuit court accepted the guilty pleas to the additional

count IV in case No. 16-CF-1698 and to count II in case No. 17-CF-698, struck the remaining counts in those cases, imposed the agreed-upon sentences, and admonished defendant on his appellate rights.

¶ 9                 B. The Motion to Withdraw the Guilty Pleas (May 15, 2018)

¶ 10              On May 15, 2018, in both cases, defendant filed identical motions to withdraw his guilty pleas. The motions alleged the guilty pleas had been "induced by erroneous advice and urging by [defense counsel] that pleading guilty was the only choice that [he] had because all the evidence suggested that [he] was guilty and that the [p]olice *** had followed correct procedures." Defendant criticized his defense counsel for his "inaction to subject the prosecution case against the Defendant to meaningful adversarial testing," and he claimed his guilty pleas were "not voluntary and knowing" and that he "was not aware of the direct consequences of his guilty plea[s]."

¶ 11              On August 10, 2018, the circuit court made identical docket entries in the two cases: "The Defendant's Petition to Withdrawn [*sic*] Guilty Plea and Vacate Sentence is presented to the Court. The Defendant's Petition is stricken as untimely as the Defendant entered his guilty plea and was sentenced on October 20, 2017, and the Defendant's Petition was filed well after 30 days from that date."

¶ 12              C. The Petition for Postconviction Relief in Case No. 17-CF-698 (May 15, 2018)

¶ 13              On May 15, 2018, in case No. 17-CF-698, defendant filed a *pro se* petition for postconviction relief. In his petition, he complained that defense counsel had rendered ineffective assistance by failing to challenge the legality of the traffic stop that had resulted in the discovery of the narcotics. Instead of filing a motion for suppression, defense counsel had advised and "induced" defendant to plead guilty. This was ineffective assistance, in defendant's view, that had

made his guilty plea "involuntary." His will, he believed, had been subverted by bad advice, and instead of urging him to give up, defense counsel should have subjected the State's case to meaningful adversarial testing by filing a motion for suppression, which would have been granted.

¶ 14    The petition gave three reasons why defendant had suffered a violation of his rights under the fourth amendment (U.S. Const., amend. IV). First, although defendant, by his own admission, had stopped halfway over the white line, he had come to a full stop at the stop sign; hence, the police officer lacked any basis for pulling defendant over for running a stop sign. Second, according to the police report, the first thing the police officer did upon returning to his squad car was radio for a canine unit; because some delay, however brief, would have resulted from radioing, mid-stop, for the canine unit, the traffic stop was unreasonably prolonged. Third, defendant's failure to have a driver's license in his physical possession was no reason to detain him, considering that the Illinois Secretary of State had issued him a driver's license that was still valid.

¶ 15    The police report to which defendant referred was attached to his petition as exhibit A, and it gave the following account of the traffic stop:

> "At approximately 0215 hours [on May 12, 2017,] I was on patrol in the area of Monroe and Decatur [in Decatur, Illinois,] when I observed a black Chevrolet Impala (IL Reg. Y954443) traveling southbound on Monroe. I observed this vehicle stop at the stop sign before turning westbound on Decatur; however the vehicle did not stop behind the white painted stop line or sidewalk as required by law.
>
> I proceeded to initiate a traffic stop on this vehicle by activating my emergency overhead lights in the 800 block of W. Decatur. Upon making contact

with the driver, and only occupant of the vehicle, I identified myself, explained the reason for the stop, and asked for his driver's license and proof of insurance on the vehicle.

The driver advised it was a rental vehicle and provided me with the rental agreement. The driver advised he did not have his driver's license with him, but identified himself as Korey D. Watkins (b/m, DOB 02/11/91). Korey advised he was coming to the residence he stopped in front of to 'play video games.'

I returned to my squad car and immediately requested Ofc. Synder and his K-9 partner to come to my traffic stop. I then began running Korey's information through LEADS [(Law Enforcement Automated Data System)] and verifying his identity via a CIMIS [(Correctional Institutional Management Information System)] photograph. Prior to even starting a citation Ofc. Snyder and his K-9 partner Rex arrived on scene and conducted a free air sniff of the vehicle. Ofc. Snyder advised Rex alerted and provided a final response for the presence of illegal drug odors in the vehicle (Ref. Ofc. Snyder's follow-up report).

I then had Korey exit the vehicle to conduct a search of his person.

Upon searching Korey I located a functioning black digital scale in his front right pants pocket. In Korey's left front pants pocket I located U.S. Currency totaling $335. I later submitted the digital scale into evidence as exhibit C277849.

I had Korey walk to the front of my squad car where I asked him to take off his shoes and hand them to me. Upon looking in Korey's left shoe I observed two clear plastic baggies with an off-white, rock-like substance in them. Through my training and experience as a police officer I immediately knew this substance to be

that of crack/cocaine. I later weighed the baggies which showed to have weights of approximately 5.7 grams and 1.6 grams respectively. The substance inside the baggies field tested positive for the presence of crack/cocaine. Through my training and experience I knew the amount of crack/cocaine located on Korey's person was more than for personal use.

\* \* \*

I placed Korey under arrest for possession of a controlled substance 0218 hours."

¶ 16     On August 10, 2018, the circuit court summarily dismissed the postconviction petition. See 725 ILCS 5/122-2.1(a)(2) (West 2018).

¶ 17                    D. The Notices of Appeal

¶ 18     In his amended notices of appeal in both cases, defendant "appeals \*\*\* from the denial of his Post-Conviction Petition and Petition to Withdraw Guilty Plea and Vacate Sentence"—although, as defendant notes in his brief, he filed a postconviction petition "only as to [Macon County] Case No. 17-CF-698."

¶ 19                         II. ANALYSIS

¶ 20              A. The Motions to Withdraw the Guilty Pleas

¶ 21     During oral arguments, defendant's attorney stated that his client was not contesting the dismissal of the motions to withdraw the guilty pleas. Therefore, that topic is abandoned, leaving only the summary dismissal of the postconviction petition in Macon County case No. 17-CF-698, the only case that defendant is appealing, his attorney told us in oral arguments.

¶ 22          B. The Summary Dismissal of the Postconviction Petition

¶ 23          1. *The Forfeiture of Any Claim Not Raised in the Petition*

¶ 24          "Any claim of substantial denial of constitutional rights not raised in the original or an amended [postconviction] petition is waived," that is to say, forfeited. 725 ILCS 5/122-3 (West 2018). Therefore, we will review only the claims that defendant raised in his postconviction petition and that we have recounted in part I(C) of this order. See *id.* The plain-error doctrine does not allow us to review claims omitted from the petition. See *People v. Owens*, 129 Ill. 2d 303, 316-17 (1989); *People v. Reddick*, 239 Ill. App. 3d 320, 323 (1992). In fact, "the plain error rule may not be invoked" at all "when a defendant collaterally attacks his conviction or sentence under the Post-Conviction Hearing Act." *Owens*, 129 Ill. 2d at 316.

¶ 25          2. *Whether the Postconviction Petition Is Frivolous or Patently Without Merit*

¶ 26          a. The Inarguability Standard for Summarily Dismissing a Postconviction Petition

¶ 27          A postconviction petition is summarily dismissible only if it is "frivolous or *** patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). The supreme court has interpreted that statutory phrase as meaning "the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 12 (2009). The supreme court has elaborated on that interpretation as follows:

> "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record. [Citation.] Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 16-17.

¶ 28          b. The Standard for Ineffectiveness Claims Relating to Guilty Pleas

¶ 29        Under the sixth amendment (U.S. Const., amend. VI), a criminal defendant has the right to receive effective assistance from defense counsel at all critical stages of the criminal case, including the guilty plea hearing. *People v. Brown*, 2017 IL 121681, ¶ 25. To prevail on a claim of ineffective assistance, the defendant must prove the two elements in *Strickland v. Washington*, 466 U.S. 668 (1984), namely, that defense counsel's performance fell below an objective standard of reasonableness and that defendant was prejudiced by the substandard performance. *Brown*, 2017 IL 121681, ¶ 25.

¶ 30        This *Strickland* standard also applies to claims that defense counsel rendered ineffective assistance during the guilty plea process. *Id.* ¶ 26. Again, the first element of *Strickland* is deficient performance. *Id.* "[A] defendant may attack the voluntary character of his plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases." (Internal quotation marks omitted.) *People v. Miller*, 346 Ill. App. 3d 972, 980 (2004). (It is difficult to understand how erroneous advice from defense counsel could cause a guilty plea to be *involuntary*, that is, "done contrary to or without choice." Merriam-Webster's Collegiate Dictionary (10th ed. 2000).) A choice to plead guilty is no less a choice for being ill-informed. Maybe it would be more accurate to say that a defendant may attack the *knowingness* or *intelligence* of the guilty plea by showing that the advice defense counsel gave, and upon which the defendant relied in pleading guilty, was not within the range of competence demanded of attorneys in criminal cases. See *People v. Hillenbrand*, 121 Ill. 2d 537, 554 (1988) ("Due process requires that a guilty plea not be accepted unless it appears to be knowing, intelligent[,] and voluntary.").

¶ 31        The defense must suffer prejudice from the incompetent performance. That is the second element of *Strickland*. *Brown*, 2017 IL 121681, ¶ 25. A guilty-plea defendant " 'must show

- 11 -

that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Id.*¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "A conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice." *People v. Valdez*, 2016 IL 119860, ¶ 29. "Rather, *** 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' " *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

¶ 32            c. The Reasonableness of Defense Counsel's Advice to Accept

the Plea Deal as Opposed to Filing a Motion for Suppression

That Would Have Been of Dubious Legal Merit

¶ 33            According to the police report attached to the postconviction petition as exhibit A, a Decatur police officer pulled defendant over on May 12, 2017, for stopping at a stop sign instead of at the white stop line. So, the police officer saw defendant violate section 11-904(b) of the Illinois Vehicle Code, which provides that, "[e]xcept when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a clearly marked stop line." 625 ILCS 5/11-904(b) (West 2016). A police officer is justified in stopping and detaining a driver if the officer observes the driver commit a traffic offense. *People v. Abdur-Rahim*, 2014 IL App (3d) 130558, ¶ 26. Therefore, the stop was justified at its inception, and any claim to the contrary would not be arguable.

¶ 34            The dog sniff adds nothing to defendant's argument. A dog sniff of the exterior of a car at a traffic stop does not implicate privacy interests. *Illinois v. Caballes*, 543 U.S. 405, 410 (2005). Therefore, police officers "do not need independent reasonable articulable suspicion of

drug-related activity in order to perform a dog sniff pursuant to an ordinary traffic stop." *People v. Reedy*, 2015 IL App (3d) 130955, ¶ 31 (citing *Caballes*, 543 U.S. at 409).

¶ 35        A traffic stop, however, may not be unreasonably prolonged for the purpose of subjecting a mere traffic-law violator to a dog sniff. *Id.* ¶ 29. Defendant argues, in his postconviction petition, that the Decatur police officer unreasonably prolonged the traffic stop by radioing, mid-stop, for a canine unit. In this regard, defendant quotes from the police report: "I returned to my squad car," the police officer wrote, "and immediately requested [Officer] Snyder and his K-9 partner to come to my traffic stop. I *then* began running [defendant's] information through LEADS and verifying his identity via a CIMIS photograph." (Emphasis added.) Defendant's reasoning is that radioing for a canine unit necessarily consumed *some* amount of time, causing the police officer to check the LEADS and the CIMIS *somewhat* later, thereby "add[ing] time to *** the stop." (Internal quotation marks omitted.) *Rodriguez v. United States*, 575 U.S. ___, ___, 135 S. Ct. 1609, 1616 (2015). In other words, performing A, B, and C in consecutive order necessarily would take longer than performing only A and C.

¶ 36        Under this efficiency expert approach to evaluating the duration of a traffic stop, any act at all, however trivial, that is extraneous to the purpose of the traffic stop—say, pausing to pop a breath mint—would be a violation of the fourth amendment. That is not a plausible view of the fourth amendment. Rather, "[r]easonableness is the touchstone of the fourth amendment" (*People v. Lawrence*, 2018 IL App (1st) 161267, ¶ 44). While reasonableness requires diligence in getting the traffic stop done, it does not require inhuman, machine-like efficiency. The question is not whether the police officer finished the traffic stop as fast as possible, down to the second; instead, the question is whether the stop was "prolonged beyond the time *reasonably* required to complete that mission." (Emphasis added.) *Caballes*, 543 U.S. at 407.

¶ 37    "Determination of whether a traffic stop was unduly prolonged requires an analysis of a totality of the circumstances," including "the brevity of the stop and whether the police acted diligently during the stop." *Reedy*, 2015 IL App (3d) 130955, ¶ 27. The Decatur police officer wrote in his report that "[p]rior to [his] even starting a citation," the canine unit arrived. The dog alerted on defendant's vehicle, giving the police probable cause to search the vehicle. See *People v. Easley*, 288 Ill. App. 3d 487, 492 (1997). The police found the plastic bags of cocaine and, a mere three minutes after pulling defendant over, arrested him. According to the police report, the police pulled defendant over at 2:15 a.m. and arrested him for the drug offense at 2:18 a.m.

¶ 38    Really, the traffic stop must have taken less than three minutes; some of the three-minute period, toward the end, would have been taken up in ordering defendant out of the car and searching him after the dog alerted on his car. Judging from the police report attached to defendant's postconviction petition, the mere act of radioing for the canine unit did not "measurably extend the duration of the stop." (Internal quotation marks omitted.) *Rodriguez*, 575 U.S. at ___, 135 S. Ct. at 1615.

¶ 39    So, defense counsel had a decision to make: Should he file a motion for suppression, arguing that the two- or three-minute traffic stop was unreasonably prolonged, or should he advise defendant to a accept a plea deal for less than half the maximum prison term that defendant could receive if he went to trial? When we consider that the decision whether to file a motion for suppression is a strategic decision, to which we owe "great deference" (*People v. Bryant*, 128 Ill. 2d 448, 458 (1989)), we conclude that the postconviction petition in this case is not arguable (see *Hodges*, 234 Ill. 2d at 12).

¶ 40                                III. CONCLUSION

¶ 41    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 42             Affirmed.

**No. 4-18-0605**

| | |
|---|---|
| **Cite as:** | *People v. Watkins*, 2019 IL App (4th) 180605 |
| **Decision Under Review:** | Appeal from the Circuit Court of Macon County, Nos. 17-CF-698, 16-CF-1698; the Hon. Thomas E. Griffith Jr., Judge, presiding. |
| **Attorneys for Appellant:** | Michael J. Costello, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |