NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190131-U

NO. 4-19-0131

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 23, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| RAJIV RICE, | ) | No. 14CF302 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the dismissal of defendant's postconviction petition.

¶ 2   In March 2014, the State charged defendant, Rajiv Rice, with attempt (first degree murder). 720 ILCS 5/9-1(a)(1) (West 2012). The charge alleged that defendant shot Katari Smith with the intent to kill him. In August 2014, a jury found defendant guilty, and in October 2014, the trial court sentenced him to 40 years in prison. Defendant appealed, and this court affirmed. *People v. Rice*, 2017 IL App (4th) 141081-U.

¶ 3   In January 2019, defendant *pro se* filed a postconviction petition. In February 2019, the trial court dismissed defendant's petition at the first stage of proceedings.

¶ 4   Defendant appeals, arguing that the trial court erroneously dismissed his petition because he stated the gist of a claim of ineffective assistance of appellate counsel. Specifically, defendant claims appellate counsel was ineffective because appellate counsel failed to raise the

following issues on direct appeal: (1) trial counsel was ineffective for failing to strike juror Hood, (2) the trial court erred by failing to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (3) the trial court improperly rejected defendant's *pro se* posttrial claim that his trial counsel had a conflict of interest without conducting a proper *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984)), and (4) these issues present cumulative error such that defendant was prejudiced.

¶ 5        We affirm.

¶ 6                                I. BACKGROUND

¶ 7        In March 2014, the State charged defendant with attempted first degree murder. 720 ILCS 5/9-1(a)(1) (West 2012). The charge alleged that defendant shot Katari Smith with the intent to kill him.

¶ 8                           A. Defendant's Jury Trial

¶ 9        In August 2014, the trial court conducted defendant's jury trial.

¶ 10                              1. *Jury Selection*

¶ 11        During jury selection, the trial court divided the prospective jurors into two panels of 14 jurors each. The court admonished the first panel, in part, as follows:

> "This is a criminal case. In a criminal case, as you probably know, the defendant, or the person accused of the crime, is presumed to be innocent, or not guilty, of the charge against [him].
>
> * * *
>
> In a criminal case such as this, the defendant, or the person accused of the crime, is not required to present any evidence and he's not required to take the witness stand to testify. If a defendant decides not to testify, his failure to testify

- 2 -

cannot be held against him.

* * *

The presumption of innocence remains with the defendant throughout the trial and is not overcome unless you believe the State has proved his guilt beyond a reasonable doubt. So, in a criminal case like this, the burden of proof is on the State and the standard of proof is beyond a reasonable doubt."

¶ 12 The trial court's admonishments to the second panel were substantially similar. After each admonition, the court asked each prospective juror if they understood and accepted these principles, and each juror responded in the affirmative.

¶ 13 Following the trial court's admonishments and questions, the parties each asked the jurors questions. One juror, identified as Mr. Hood, engaged in the following question and answer with defense counsel:

"[COUNSEL]: And do you believe that [defendant] is not in any way obligated to prove his innocence or even to take the stand or testify or even say anything?

MR. HOOD: No.

[COUNSEL]: And would that [a]ffect your ability to determine his guilt or innocence?

MR. HOOD: No."

¶ 14 Defendant accepted Hood as a juror.

¶ 15 B. The Trial

¶ 16 Because the evidence at trial is not at issue on this appeal, we will discuss it only in summary.

¶ 17        Katari Smith testified that after he heard a car window break, he looked out his window. Smith saw a man near his car and someone else sitting in the passenger seat of a car parked on a nearby street. Smith went outside, was shot in the knee, and crawled back inside. A few minutes later, someone helped him get into a car, and he went to a hospital.

¶ 18        James Wrigley testified that he was a detective and was sent to investigate the scene of the shooting. Wrigley identified (1) .45-caliber shell casings he found in the street near the apartment building, (2) photos of a burned car in the parking lot, (3) .380-caliber shell casings he found in the yard of the apartment, (4) two .380-caliber handguns and an empty box of ammunition he found inside the apartment, and (5) photos of the bullet holes he found in the fence and wall of the apartment.

¶ 19        The State showed a video to the jury that depicted police officers chasing a vehicle driven by a man, Rafael Kennedy, with defendant in the passenger seat. In the video, something can be seen falling from the passenger's side window. Other officers testified that they found two handguns, a .40-caliber and .45-caliber, on the roadside along the chase route. Forensic scientists testified that the .45-caliber casings found at the scene of the shooting matched the .45-caliber handgun found along the route of the chase. Kennedy had gunshot residue on his clothing. The .45-caliber handgun had DNA on it. Kennedy could be excluded as a source of that DNA, but defendant could not be excluded.

¶ 20        The State introduced a video of defendant's interrogation by police. In the video, defendant stated that he was in the passenger's seat in Kennedy's car and was looking at his phone when he heard gunshots. Defendant ducked down and checked himself for injury as Kennedy jumped in the car and drove away. Defendant said he never saw any guns or anyone shooting, he did not know who was shooting or why, and he did not know where the guns by the road had come

from.

¶ 21        The jury found defendant guilty, and in October 2014, the trial court sentenced him to 40 years in prison, 25 years for attempted first degree murder and an additional 15 years for using a firearm in the commission of that offense.

¶ 22                    B. Defendant's Ineffective Assistance of Counsel Claim

¶ 23        Following sentencing, defendant *pro se* filed a motion to set aside the verdict because of ineffective assistance of counsel. In the motion, he alleged that counsel's performance was deficient and prejudicial and that counsel had a conflict of interest because counsel was related to Officer Jamie Wrigley, who had testified during trial.

¶ 24        The trial court held what it described as a *Krankel* hearing, at which the court asked counsel for comment about defendant's complaint. Counsel explained that one of the investigating officers who testified at trial was his nephew. Counsel further explained that defendant was asking for counsel to be excused and for a new trial to be held because counsel was ineffective. The court asked the State what its position was on the matter, to which the State responded that it did not believe there was a *per se* conflict of interest and requested that counsel continue to represent defendant. Counsel further explained that Wrigley had testified at trial and was the officer who marked the casings and bullet holes through the fence. The court asked the State whether Wrigley identified defendant as a shooter, and the State confirmed that Wrigley did not identify defendant.

¶ 25        The trial court then asked defendant if he wanted to say anything further regarding his ineffective assistance of counsel claim and explained that defendant had to give a reason why he did not want trial counsel as his attorney. Defendant said that trial counsel did not let the court know about "the interest thing that was going on during [his] trial." Defendant also said there was "a lot of stuff," including that trial counsel (1) did not listen to him, (2) did not perform well during

trial, (3) was more concerned about money than defendant's case, (4) told defendant to take a plea bargain, and (5) was not fighting for defendant. The court responded that it had observed trial counsel during the trial and believed counsel was effective. The court also said that it did not believe defendant's contentions showed a basis for ineffective assistance or that a conflict of interest existed because the officer was "simply collecting evidence[.]" The court denied defendant's request that trial counsel no longer serve as his attorney.

¶ 26        Defendant appealed, and this court affirmed. *People v. Rice*, 2017 IL App (4th) 141081-U.

¶ 27                              C. Defendant's Postconviction Petition

¶ 28        In January 2019, defendant *pro se* filed a postconviction petition, in which he argued that (1) trial counsel was ineffective for failing to challenge two jurors who had expressed an inability to be fair and impartial, (2) cumulative errors by the trial court and trial counsel deprived him of a fair trial, and (3) appellate counsel was ineffective by failing to raise the claims set forth in his petition. Defendant attached, among other documents, transcripts from jury selection.

¶ 29        In February 2019, the trial court dismissed defendant's petition at the first stage of proceedings. The court stated that (1) nothing in the record established that a juror would have been dismissed for cause, (2) jury selection was a matter of trial strategy, (3) the allegation of cumulative error was conclusory, and (4) appellate counsel is not required to raise issues that counsel reasonably determines are not meritorious.

¶ 30        This appeal followed.

¶ 31                              II. ANALYSIS

¶ 32        Defendant appeals, arguing that the trial court erroneously dismissed his petition

because he stated the gist of a claim of ineffective assistance of appellate counsel. Specifically, defendant claims appellate counsel was ineffective for failing to raise the following issues on direct appeal: (1) trial counsel was ineffective for failing to strike juror Hood, (2) the trial court erred by failing to comply with Illinois Supreme Court Rule 431(b), (3) the trial court improperly rejected defendant's *pro se* posttrial claim that his trial counsel had a conflict of interest without conducting a proper *Krankel* hearing, and (4) these issues present cumulative error such that defendant was prejudiced. We disagree and affirm.

¶ 33         A. Review of First-Stage Dismissal of a Postconviction Petition

¶ 34         The Post-Conviction Hearing Act (Act) provides a three-step process for determining whether a defendant was denied his constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2018). Within the first 90 days after the petition is filed and docketed, the trial court shall dismiss a petition summarily if the court determines it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). "A petition may be dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Fathauer*, 2019 IL App (4th) 180241, ¶ 40, 146 N.E.3d 175 (citing *People v. Allen*, 2015 IL 113135, ¶ 25, 32 N.E.3d 615). "Because most postconviction petitions are drafted by *pro se* defendants, the threshold for a petition to survive the first stage of review is low." (Internal quotation marks omitted.) *Id.* "If a petition alleges sufficient facts to state the gist of a constitutional claim, first-stage dismissal is inappropriate." *Id.* This court reviews first-stage dismissals under a *de novo* standard of review. *Allen*, 2015 IL 113135, ¶ 19.

¶ 35                    B. Trial Counsel Was Effective

¶ 36         First, defendant argues that he received ineffective assistance of trial counsel based upon counsel's failure to strike juror Hood because Hood "did not believe the fundamental

- 7 -

principle that a defendant was not obligated to prove his innocence or testify[.]" Defendant further contends that his appellate counsel was ineffective for failing to raise this issue on direct appeal. We disagree.

¶ 37                                     1. *Double Negatives*

¶ 38        This case does not turn on the law of ineffective assistance of counsel but instead on the problems presented by spoken double negatives. Trial counsel asked, "And do you believe that [defendant] is not in any way obligated to prove his innocence or even to take the stand or testify or even say anything?" Hood replied, "No." In context, this response is a double negative.

¶ 39        The First District Appellate Court explored this subject in *People v. Roman*, 2013 IL App (1st) 110882, ¶¶ 42-44, 1 N.E.3d 552, and wrote the following:

        "When addressing the prospective jurors individually, the trial judge asked

        them essentially the same question regarding the fourth *Zehr* principle in a manner

        closer to the 2012 language: 'You will not hold it against either of them should they

        choose not to testify?' Two prospective jurors, who were seated on the jury

        answered 'No,' while two others who were chosen as alternate jurors answered

        'Yes' and 'Right.' Roman argues that both 'no' and 'yes' cannot be appropriate

        answers to the same question and this supports his assertion that a biased juror sat

        on his jury. ***

        Although prospective jurors gave different answers to the same question,

        this highlights a problem with the language of Rule 431(b) and is no evidence of

        bias. To suggest that by answering no, the juror who was seated on the jury was

        informing the court she would hold it against Roman if he did not testify and that

        defense counsel did not immediately object defies credulity. A more reasonable

explanation is that the double negative language in the rule caused confusion for the potential jurors, who were trying to inform the trial judge that they would not hold it against Roman if he failed to testify, but answered the question both in the affirmative and the negative.

Also, while the presence of a double negative in the transcript raises an ambiguity, often in informal speech what is referred to as double negatives are used without causing confusion or misunderstanding. The reason for this is that speakers are in a position to observe one another's tone of voice, gestures, facial expression, and other oral/visual characteristics, as in this case."

¶ 40                                    2. *This Case*

¶ 41        In this case, defendant's claim was frivolous. No reasonable court could possibly conclude that trial counsel was ineffective for interpreting Hood's response as an affirmation rather than a rejection of the principle that defendant need not present evidence. When properly considered in context, this court believes that Hood, in his response to the court's question, was essentially saying the following: "No, I do not believe defendant is obligated in any way to prove his innocence or take the stand to testify."

¶ 42        As noted above, counsel could have relied on context cues, paralanguage, and other factors that do not appear on the record in order to determine that Hood did accept the principle. See *People v. McGath*, 2017 IL App (4th) 150608, ¶ 33, 83 N.E.3d 671 (describing the information contained in paralanguage that is rarely included in a transcript). Another strong indication that Hood was agreeing is that during questioning by the trial court, Hood affirmed that he understood and accepted that defendant was not required to present evidence or testify and that defendant's not testifying could not be held against him. We also note that although trial counsel's question

did prompt the double negative, the trial court's inquiry left no room for ambiguity.

¶ 43     In other words, the worst-case scenario is that at one point Hood stated he accepted and understood the principle without ambiguity, and at another point Hood gave an ambiguous answer. Even in the light most favorable to defendant, we cannot conclude that trial counsel could have been arguably ineffective for not striking Hood. Similarly, appellate counsel could not have been ineffective for not raising this meritless issue.

¶ 44                    C. Defendant's Forfeited Claims

¶ 45     Defendant argues that (1) the trial court erred when it collapsed the last two Rule 431(b) principles into a single statement of law and (2) his appellate counsel was ineffective for failing to raise the trial court's improper dismissal of defendant's claim regarding trial counsel's conflict of interest. However, defendant has forfeited these claims.

¶ 46     As the State points out, because defendant's *pro se* petition did not raise these claims, he cannot raise these claims for the first time on appeal. *People v. Watkins*, 2019 IL App (4th) 180605, ¶ 24, 145 N.E.3d 450.

¶ 47     Regarding defendant's argument that the trial court erred by collapsing the last two Rule 431(b) principles into a single statement of law, defendant acknowledges that he did not specifically make this claim in his petition. However, he argues that because he made arguments about Hood's qualifications to be a juror, he adequately stated this claim in his *pro se* petition.

¶ 48     Regarding defendant's argument about a possible conflict of interest, defendant argues that he "did raise general claims that errors by the trial court and trial counsel denied him the right to a fair trial," and that, liberally construed, his general claims preserved this issue for appeal. The "general claims" defendant describes are that he argued that cumulative error entitled him to relief.

¶ 49 We conclude that both of these arguments fall far short of what is necessary to raise an issue for postconviction relief. Because defendant did not adequately raise these issues in his petition, we will not address them for the first time on appeal. *Id.* If we agreed with defendant, the simple act of including a cumulative error argument in any *pro se* petition would automatically raise all trial issues for postconviction relief. Such a conclusion would render meaningless the rule discussed in *Watkins*. See *id.*

¶ 50 D. No Cumulative Error Warrants Reversal

¶ 51 Finally, defendant argues that even if the individual errors he has identified did not warrant proceeding to the second stage, the combination of the errors and their resulting prejudice merits proceeding to the second stage. We disagree. Because we conclude that none of the allegations of error have merit, no cumulative error is possible.

¶ 52 III. CONCLUSION

¶ 53 For the reasons stated, we affirm.

¶ 54 Affirmed.