NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (4th) 210339-U

NO. 4-21-0339

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 2, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Menard County |
| JEFFREY D. HAYNES, | ) | No. 15CF23 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Alan D. Tucker, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court reversed the trial court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 2        In November 2015, defendant, Jeffrey D. Haynes, pleaded guilty to drug-induced homicide (720 ILCS 5/9-3.3(a) (West 2014)) in exchange for an agreed sentence of 15 years in prison and dismissal of a charge of delivery of a controlled substance (720 ILCS 570/401(d) (West 2014)).

¶ 3        In October 2018, defendant filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)), alleging plea counsel was ineffective for failing to (1) inform defendant of critical discovery and (2) investigate a potential defense. In January 2019, the trial court summarily dismissed the petition, and in October 2020, this court affirmed. *People v. Haynes*, 2020 IL App (4th) 190132-U, ¶ 4.

¶ 4        In February 2021, defendant filed a motion for leave to file a successive

postconviction petition, alleging that (1) his attorney and the trial court misinformed him that the minimum possible sentence was 15 years when the correct minimum was 6 years and (2) he would not have pleaded guilty if he had been correctly admonished. In May 2021, the trial court denied defendant's motion, concluding that defendant could have raised the claim in his original postconviction petition.

¶ 5        Defendant appeals, arguing the trial court erred by denying his motion for leave to file a successive postconviction petition. We agree, reverse the trial court's judgment, and remand for further proceedings.

¶ 6                                    I. BACKGROUND

¶ 7                                    A. The Charges

¶ 8        In June 2015, the State charged defendant with drug-induced homicide (720 ILCS 5/9-3.3(a) (West 2014)) and delivery of less than one gram of heroin (720 ILCS 570/401(d) (West 2014)). The State alleged that (1) defendant delivered heroin to Brent King in violation of section 401(d) of the Illinois Controlled Substances Act (720 ILCS 570/401(d) (West 2014)) and (2) King died as a result of his ingesting that heroin. The information filed by the State claimed the drug-induced homicide charge was a "Super Class X," meaning that a conviction of that offense required a sentence of 15 to 30 years in prison.

¶ 9                          B. The Hearing on Defendant's First Appearance

¶ 10       At defendant's arraignment, the trial court informed him that the possible penalty for drug-induced homicide was 15 to 30 years. The following exchange then occurred.

                "THE COURT: If you have any questions of me with regard to what you
        have been charged with or the potential penalties that you face on those charges,
        you can ask them right now.

[DEFENDANT]: So, no matter what, I'm looking at 15 years in prison?

THE COURT: Well, that with regard to Count 1, those are the potential penalties you face on that Count, yes.

[DEFENDANT]: I have no questions."

¶ 11　　The trial court then appointed counsel for defendant and addressed the issue of bond. The State represented that defendant was "presently on probation in Menard County for delivery of, for excuse me, possession of a controlled substance." The State further represented that the possession conviction was a Class 4 felony and defendant was on "first offender probation." Defendant also had a Class A misdemeanor conviction for driving under the influence. The State noted defendant was charged with a Class X felony and asked for bond to be set at $150,000. The trial court stated the following:

"THE COURT: All right. Based upon those facts, the fact that this is a non probationable sentence to the Illinois Department of Corrections of a minimum of 15, maximum of 30, ultimate seriousness here [defendant] if you haven't gotten it by now, I want you to get it loud and clear.

[DEFNDANT]: I think I already got it.

THE COURT: That based on the fact that extremely ironic thing that [defendant] is on probation in Menard County for first offender probation for delivery of a controlled substance. Based on those facts, [defendant]—

[DEFENDANT]: I didn't deliver. For the probation, it wasn't delivery.

[THE PROSECUTOR]: It was possession Judge, excuse me.

THE COURT: Possession. Well either way, [defendant,] that helps maybe a slight bit but not tons. The Court will set bond in the amount of $150,000."

¶ 12                                    C. The Guilty Plea Hearing

¶ 13        In November 2015, the trial court conducted a guilty-plea and sentencing hearing. In exchange for defendant's pleading guilty to drug-induced homicide, the State agreed to dismiss the delivery charge and defendant would receive a prison sentence of 15 years. The trial court stated, "[T]he possible sentence for [drug-induced homicide] is 15 to 30 years in the Department of Corrections. *** It is non probationable."

¶ 14        As a factual basis for the plea, the prosecutor stated the following:

"Should this matter proceed to trial the State would call officers of the Menard County Sheriff's Department and the Central Illinois Enforcement Group who would testify as to an investigation relating to the death of Brent King. Mr. King died of a drug overdose including heroin. It would be the State's evidence that the heroin was provided through the Defendant herein on or about April 7, 2015. That once Mr. King was found and pronounced dead an autopsy was conducted. The autopsy revealed that the cause of death was in fact due to the drug overdose including heroin. Judge in a recorded conversation the Defendant herein provided a statement indicating that he in fact was the person who delivered the heroin to Mr. King. On or about June 3, 2015 the Defendant was brought in, interviewed by agents of the Menard County Sheriff's Department, of Central Illinois Enforcement Group and I believe, by the DEA. During those interviews the Defendant did admit to his involvement and admitted to delivering heroin and cooperated with the investigation."

¶ 15        The trial court admonished defendant of his rights, confirmed that defendant was satisfied with his counsel, found defendant's plea to be knowing and voluntary, and stated the

following: "the Court is going to find that the [d]efendant understands the nature of the charges against him as well as the possible penalties." The State then notified the court that the sentence was to be served at 75%. When asked if that was his understanding, defense counsel stated, "Yes Judge. We have discussed that." The court accepted defendant's plea and sentenced him to 15 years in prison.

¶ 16                          D. The Postconviction Proceedings

¶ 17          In October 2018, defendant *pro se* filed a postconviction petition pursuant to the Act, alleging, in relevant part, that his plea counsel provided ineffective assistance by failing to inform defendant of all the information relevant to his case. Specifically, defendant asserted that counsel failed to (1) review the autopsy report with defendant, (2) find an expert who would testify that King's ingestion of heroin did not cause his death, and (3) inform defendant that King's fiancée, Terry Whitehurst, gave conflicting stories to the police about King's drug use and reported that she ingested the same amount of heroin at the same time without suffering any unintended effects. Defendant attached police reports and a copy of the autopsy report in support of his petition.

¶ 18          In January 2019, the trial court entered an order summarily dismissing defendant's postconviction petition, finding "the Petition is patently without merit."

¶ 19          On appeal, this court affirmed the trial court's first-stage dismissal of defendant's postconviction petition. *Haynes*, 2020 IL App (4th) 190132-U, ¶ 4. However, in a parenthetical, when setting forth the procedural and factual background of the case, this court observed the error in the admonishments defendant received regarding the minimum sentence and wrote the following:

          "We note that the State and trial court consistently informed defendant that the

statutory minimum for drug-induced homicide was 15 years. However, drug-induced homicide is a simple Class X felony unless the defendant violated subsections 401(a) or (c). Nonetheless, neither defendant before the trial court nor [the Office of the State Appellate Defender] on appeal raise any argument that defendant was improperly charged, admonished, or sentenced." *Id.* ¶ 7.

¶ 20    E. The Motion for Leave To File a Successive Postconviction Petition

¶ 21    In February 2021, defendant filed a motion for leave to file a successive postconviction petition. In that motion, defendant explained that during the original trial proceedings, the State, trial court, and defense counsel all held the incorrect view that the minimum possible sentence was 15 years; however, because the State charged defendant with violating section 401(d), defendant was actually subject to a sentencing range of only 6 to 30 years. Defendant explained that when he was arrested, the first officer to interview him told him that the minimum sentence was 15 years. Defendant further maintained that his trial counsel misinformed him that the minimum possible sentence was 15 years.

¶ 22    Defendant asserted that his trial counsel was ineffective for failing to advise him or the trial court of the correct sentencing range. Defendant stated neither he nor a reasonable person would have agreed to plead guilty in exchange for a 15-year sentence if a wider sentencing range was available. Defendant contended that because he was unaware of the incorrect sentencing range when he filed his initial postconviction petition, he could not have raised this claim earlier.

¶ 23    In May 2021, the trial court entered a written order denying defendant's motion for leave to file. The court noted defendant's claim that at the time of his filing an initial postconviction petition "he was unaware of the misleading [sentencing range] information

- 6 -

provided by various parties including the Judge at his first appearance." The court also noted that defendant was correct that the offense of drug-induced homicide, as charged by the State, was a Class X felony with a sentencing range of 6 to 30 years. Nonetheless, the court concluded that defendant's "subjective ignorance" of the law could not satisfy the "cause" standard and denied the motion.

¶ 24          This appeal followed.

¶ 25                              II. ANALYSIS

¶ 26          Defendant appeals, arguing the trial court erred by denying his motion for leave to file a successive postconviction petition. We agree, reverse the trial court's judgment, and remand for further proceedings.

¶ 27          Defendant argues that counsel was ineffective for failing to notify the trial court that the correct sentencing range was 6 to 30 years. Defendant contends he established cause for his not raising the claim earlier because the State, defense counsel, and the trial court affirmatively misled him that the minimum sentence was 15 years. Defendant asserts he established prejudice because he reasonably could have rejected the plea agreement and sought a lower sentence either through plea bargaining or at trial because he had a chance of (1) acquittal or (2) receiving a sentence lower than 15 years.

¶ 28          The State concedes that defendant was incorrectly informed by the prosecutor, defense counsel, and trial judge that the minimum sentence was 15 years when, in fact, the minimum was 6 years. However, the State argues that defendant should have raised the claim earlier. The State contends that the charging document was wrong on its face and defendant could have noticed the error at any time by looking up the statute. Further, the State contends that (1) defendant's 15-year sentence was toward the lower end of the possible correct sentencing

range of 6 to 30 years and (2) defendant would not have insisted on going to trial because he offers no conceivable defense.

¶ 29    Under the unique facts of this case, we conclude that the trial court should have granted defendant leave to file his successive postconviction petition.

¶ 30                            A. The Applicable Law

¶ 31                    1. *Successive Postconviction Petitions*

¶ 32    The Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Bailey*, 2017 IL 121450, ¶ 17, 102 N.E.3d 114; 725 ILCS 5/122-1 (West 2020). The Act contemplates the filing of only one postconviction petition and expressly provides that " '[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.' " *Bailey*, 2017 IL 121450, ¶ 15 (quoting 725 ILCS 5/122-3 (West 2014)). However, a trial court may grant a defendant leave to file a successive postconviction petition if (1) the defendant demonstrates cause for his failure to bring the claim in the initial petition and (2) prejudice results from that failure. *Id.* ¶ 14.

¶ 33    The Illinois Supreme Court has described the cause and prejudice test as follows:
" 'cause' is shown by a defendant identifying an objective factor that impeded the ability to raise a specific claim during the initial postconviction proceeding; 'prejudice' is shown by demonstrating that the claim not raised during the initial proceeding so infected the trial that the resulting conviction or sentence violated due process." *People v. Dorsey*, 2021 IL 123010, ¶ 32, 183 N.E.3d 715.

¶ 34    A defendant does not need to "establish cause and prejudice conclusively prior to

being granted leave to file a successive petition." *People v. Smith*, 2014 IL 115946, ¶ 29, 21 N.E.3d 1172. Instead, a defendant "must submit enough in the way of documentation to allow a circuit court to make" the cause-and-prejudice determination. (Internal quotation marks omitted.) *Id. ¶* 30. A trial court should grant leave to file when a defendant makes a *prima facie* showing of cause and prejudice. *Bailey*, 2017 IL 121450, ¶ 24.

¶ 35   At this stage, a trial "court is precluded from making factual and credibility determinations." *People v. Robinson*, 2020 IL 123849, ¶ 45, 181 N.E.3d 37. "[T]he well-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity." *Id.* ¶ 60. A trial court's denial of leave to file a successive postconviction petition presents a question of law that appellate courts review *de novo*. *Bailey*, 2017 IL 121450, ¶ 13.

¶ 36                    2. *Ineffective Assistance of Guilty-Plea Counsel*

¶ 37   To establish a claim of ineffective assistance of guilty-plea counsel, the defendant must show that counsel's performance (1) fell below an objective standard of reasonableness and (2) was prejudicial. *People v. Brown*, 2017 IL 121681, ¶ 25, 102 N.E.3d 205. A defendant's failure to satisfy either prong negates a claim of ineffective assistance of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 91, 161 N.E.3d 223; see also *People v. Palmer*, 162 Ill. 2d 465, 475, 643 N.E.2d 797, 801 (1994) (holding the same with respect to guilty pleas).

¶ 38   "[A] defendant may attack the *knowingness* or *intelligence* of the guilty plea by showing that the advice defense counsel gave, and upon which the defendant relied in pleading guilty, was not within the range of competence demanded of attorneys in criminal cases." (Emphases in original.) *People v. Watkins*, 2019 IL App (4th) 180605, ¶ 30, 145 N.E.3d 450. To establish prejudice, a defendant " 'must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' "
*Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). When the
ineffective assistance claim relates to a defendant's prospects at trial, the Illinois Supreme Court
has required "a claim of innocence or a plausible defense to establish prejudice." *Id.* ¶ 45 (citing
*People v. Hall*, 217 Ill. 2d 324, 335-36, 841 N.E.2d 913, 920 (2005)). When the claim relates to
advice concerning the consequences of a plea, a petitioner "must convince the court that a
decision to reject the plea bargain would have been rational under the circumstances." (Internal
quotation marks omitted.) *Id.* ¶ 40.

¶ 39                                    B. This Case

¶ 40            We begin by reiterating that the facts of this case are truly unique. From arrest to
sentencing, everyone involved in defendant's case—namely, the police, the defense counsel, the
prosecutor, and even the trial court—was under the mistaken impression that the charge against
defendant, drug-induced homicide, was a "Super Class X" felony with a minimum sentence of
15 years in prison. According to defendant's motion for leave to file, when he was arrested, the
police insisted he was facing at least 15 years in prison. In its information, the State asserted the
sentencing range was "15-30" despite the fact that it specifically charged defendant under
subsection (d) for delivery of less than one gram of heroin. At arraignment, the court *repeatedly*
told defendant that the possible sentencing range was 15 to 30 years. Indeed, defendant directly
asked the court if "no matter what, I'm looking at 15 years in prison," and the court responded in
the affirmative.

¶ 41            During the bond portion of that same hearing, the trial court emphasized that the
offense was serious because it was a "non probationable sentence to the Illinois Department of
Corrections of a minimum of 15, maximum of 30, ultimate seriousness here [defendant] if you

- 10 -

haven't gotten it by now I want you to get it loud and clear." The court then emphasized that defendant had committed the offense while on probation for an earlier drug offense and implied that was the reason for the 15-to-30-year sentencing range. At the guilty plea hearing, defendant's counsel stood mute when the court admonished defendant that the minimum sentence was 15 years.

¶ 42          This case is *sui generis*. We have not found, and the parties have not made us aware of, a comparable case. The absence of a comparable case is hardly surprising. Everyone should expect that prosecutors, defense attorneys, and trial judges would carefully review the criminal charges and their accompanying penalties and accurately state them to defendants.

¶ 43          This case is unique because not only did all of the lawyers fail to recognize their mistake, but they all affirmatively and repeatedly misrepresented critical information to defendant. The trial court repeatedly reaffirmed the mistake by telling defendant throughout the proceedings, including in response to defendant's direct question, the minimum sentence was 15 years.

¶ 44          Although the State concedes that defendant was improperly admonished of the minimum sentence, the State nonetheless argues that the error (1) was apparent on the face of the charging document and (2) would have become apparent if defendant had consulted the statute in question (720 ILCS 5/9-3.3(a) (West 2014)). This argument is far from persuasive because it is premised upon the notion that defendant erred by relying on the repeated representations about the mandatory minimum sentence he faced made not only by the prosecutor and his defense counsel, but also by the trial judge. Given this peculiar context, a reasonable person would justifiably rely on the representations of the seasoned professionals in the criminal justice system and conclude that those representations were correct. Accordingly, defendant established a

*prima facie* case of cause.

¶ 45        In conclusion, we note that had defendant filed a motion to withdraw his guilty plea within 30 days of pleading guilty, asserting the same facts he asserts in his motion for leave to file a successive petition, it would constitute almost certainly an abuse of discretion if the trial court denied the motion. See *People v. Fern*, 240 Ill. App. 3d 1031, 1043, 607 N.E.2d 951, 961 (1993) ("The withdrawal of a guilty plea may be allowed in circumstances where the plea resulted from a misapprehension of law or fact, or in cases where it appears the plea was entered as a result of a misrepresentation by counsel, the State's Attorney, or someone else in authority."). Based on the information in the record and taking defendant's allegations as true, the difference between a sentencing range of 6 to 30 years and 15 to 30 years was significant, and we conclude, under the specific facts of this case, defendant is entitled to file his successive postconviction petition.

¶ 46                         III. CONCLUSION

¶ 47        For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 48        Reversed and remanded.