NOTICE
Decision filed 10/06/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220578-U

NO. 5-22-0578

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Trial Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 12-CF-829 |
| | ) | |
| ERIC A. CURRIE, | ) | Honorable |
| | ) | James R. Coryell, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the judgment of the trial court denying defendant's postconviction petition after a third-stage evidentiary hearing where the defendant failed to demonstrate prejudice due to ineffective assistance of counsel.

¶ 2    The defendant, Eric A. Currie, pleaded guilty on February 18, 2014, to one count of unlawful possession with the intent to deliver 100 grams or more, but less than 400 grams, of a controlled substance, after having been previously convicted of unlawful possession of a controlled substance in violation of section 401(a)(2)(B) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(2)(B) (West 2012)). The defendant was sentenced on April 17, 2014, to 15 years' incarceration within the Illinois Department of Corrections.

¶ 3    The defendant filed a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)), on April 18, 2017. After a third-stage evidentiary

1

hearing on August 12, 2022, the trial court denied the defendant's petition and the defendant now appeals. For the following reasons, we affirm the judgment of the trial court.

¶ 4                                    I. BACKGROUND

¶ 5       On February 18, 2014, the defendant was scheduled to stand trial. The defendant was represented by Baku Patel (defense counsel), who did not appear on the day of trial and instead, sent his associate, Dennis Steeves (plea counsel), to appear and request a continuance due to on-going plea negotiations. The State objected, indicating that it was ready to proceed, and the trial court denied the request for a continuance since the matter had been pending for almost two years. The matter then proceeded with jury selection.

¶ 6       Prior to jury selection, plea counsel informed the trial court that the defendant had witnesses he intended to call, but that he only had the moniker of one of the witnesses and did not know the witness's legal name. The State indicated that it was unaware of two of the defense's witnesses since those witnesses had not been previously disclosed. The trial court indicated that it would read the witnesses' name to the jury, but withhold its ruling on whether the two witnesses would be barred from testifying at trial until the State had an opportunity to speak with the witnesses. As such, the trial court indicated that the jury would be selected, but not sworn, so that jeopardy would not be attached. Plea counsel then participated in selecting a jury.

¶ 7       Later that afternoon, the trial court was informed that there was a disposition in the case, and the matter was recalled. Plea counsel informed the trial court that the defendant would be entering an open plea to a single count of unlawful possession, and that the remaining counts contained in the charging instrument would be dismissed. The trial court proceeded with admonishments regarding an open plea, and when advising the defendant of the minimum and maximum sentence, informed the defendant that it was a 40-year maximum period of

incarceration. The State informed the trial court that, although the charging instrument stated 40 years, it should have stated 80 years because of the prior conviction. The State then indicated that it would not seek an extended term sentence, and the trial court informed the defendant that the maximum sentence remained at 40 years. The trial court then continued its admonishments, including informing the defendant that he did not have to plead guilty and could proceed to trial the next day. The defendant acknowledged his understanding of each right and then pleaded guilty to one count of unlawful possession with the intent to deliver a controlled substance (720 ILCS 570/401(a)(2)(B) (West 2012)).

¶ 8    On March 21, 2014, the defendant filed a *pro se* "Motion to Take my plead Back," that stated that the defendant felt "as if I was force[d] too [*sic*] take a plead [*sic*] of guilty." The defendant withdrew his *pro se* motion at his sentencing hearing on April 17, 2014, and was sentenced to 15 years' incarceration and 3 years of mandatory supervised release.

¶ 9    On May 22, 2014, the defendant filed a *pro se* motion for reduction of sentence and a *pro se* motion to withdraw his guilty plea and vacate his sentence. Both motions alleged, *inter alia*, ineffective assistance of counsel. The State filed a motion to dismiss the defendant's post-sentence pleadings arguing that the pleadings were filed beyond the 30-day requirement of Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013). On July 9, 2015, the trial court conducted a hearing and denied the defendant's post-sentence pleadings finding that the motions were untimely. The defendant appealed and the appeal was dismissed. *People v. Currie*, No. 4-15-0592 (2015) (unpublished order under Illinois Supreme Court Rule 23(c)).[1]

---

[1]The mandate of the appellate court stated that the appeal was dismissed, but does not state the basis of the dismissal. According to the defendant's brief, that appeal was dismissed owing to the absence of any timely post-sentencing motions.

3

¶ 10    The defendant filed a postconviction petition pursuant to the Act (725 ILCS 5/122-1 *et seq.* (West 2016)), on April 18, 2017. On May 18, 2017, the trial court appointed counsel to represent the defendant, and counsel was granted leave to withdraw on December 20, 2017.[2] The trial court appointed new counsel who, after requesting numerous continuances, filed an amended petition on February 27, 2019.

¶ 11    The State filed a motion to dismiss the amended petition on May 29, 2019. The trial court conducted a hearing on June 21, 2019, and found that the defendant's affidavit was not "in compliance with Supreme Court rules dealing with affidavits." As such, the trial court granted the State's motion to dismiss with leave for the defendant to file a second amended petition, with a proper affidavit, within 90 days.[3]

¶ 12    On December 10, 2021, the defendant filed a motion for leave to file a late second amended petition. The trial court granted the defendant's motion for leave on January 6, 2022, and the defendant's second amended petition was filed *instanter*.[4] The defendant's second amended petition alleged ineffective assistance of counsel in that defense counsel failed to file a motion to withdraw the defendant's guilty plea as requested by the defendant; failed to challenge the voluntariness of the defendant's confession; unreasonably coerced the defendant into pleading guilty because counsel was unprepared for trial; and failed to preserve any issues for appeal.

---

[2]The defendant appealed the trial court's ruling of December 20, 2017, allowing counsel to withdraw, which was a not an appealable order. The appeal was dismissed on April 20, 2018. *People v. Currie*, No. 4-18-0175 (2018) (unpublished order under Illinois Supreme Court Rule 23(c)).

[3]The defendant appealed the trial court's ruling of June 21, 2019, dismissing his initial petition, which was not an appealable order. The appeal was dismissed on August 15, 2019. *People v. Currie*, No. 4-19-0474 (2015) (unpublished order under Illinois Supreme Court Rule 23(c)).

[4]The defendant's second amended petition was attached to the defendant's motion for leave to file a late petition and as such, has a file-stamp date of December 10, 2021.

4

¶ 13    The Stated filed a motion to dismiss the defendant's second amended petition on January 14, 2022. The trial court denied the State's motion to dismiss on April 28, 2022, and the matter proceeded to an evidentiary hearing on August 12, 2022.

¶ 14    At the hearing, the defendant testified that he had filed a *pro se* motion to withdraw his guilty plea prior to sentencing, but withdrew it upon the advice of defense counsel that the motion was premature and that defense counsel would file it after sentencing. The defendant stated that defense counsel failed to file the motion after sentencing so the defendant again filed a *pro se* motion to withdraw his guilty plea. The defendant stated that the reason he had wanted to withdraw his guilty plea was because he had only spoken with his defense counsel over the telephone several times during the previous year and had only seen him in person at a pre-trial hearing. The defendant stated that during the time defense counsel represented him, he was incarcerated for two brief periods, but that the majority of the time he was not in custody.

¶ 15    The defendant testified that there was a previous offer of 10 years from the State, and that he had wanted to take that offer, but that he was going through "some other cases that I had to wrap up, get out of the way." The defendant stated that defense counsel never discussed discovery or any possible defenses. The defendant also stated that his defense counsel failed to contact any witnesses or conduct any investigation on his behalf. The defendant testified that, on the day of trial, he found out that he was facing a sentence of 90 years, and that his plea counsel was not prepared for trial. As such, the defendant testified that he had informed the judge that in taking the plea, "I felt coerced."

¶ 16    Next, the defendant's defense counsel, Baku Patel, was called by the State. Defense counsel testified that, during the time he represented the defendant, he had several associates that he worked with on criminal cases, but that he was always the primary counsel for trials. Defense

counsel stated that it was a difficult case for the defense because of all the evidence, so they were seeking the best plea offer. Defense counsel stated that the best offer they had received from the State was 20 years' incarceration. With regard to witnesses, defense counsel stated that, based on the statements given to law enforcement, none of the known witnesses would have been helpful to the defendant's defense since they all denied ownership of the drugs, whereas the defendant had admitted ownership. Defense counsel stated that he was never given any information about an additional witness from the defendant. Given the overwhelming evidence, defense counsel stated that he believed the best course of action in this case was negotiating a plea agreement.

¶ 17    Defense counsel further stated that one of his associates, Dennis Steeves, appeared several times in this case, but that it was not defense counsel's intention to have the associate try the case. Defense counsel stated that his associate appeared on the day of the plea in order to obtain a continuance since the parties were still attempting to work out a plea agreement. Specifically, defense counsel testified as follows:

"Q. So when it came to the day of trial you were still in the negotiating mode. You were not completely prepared for trial?

A. That would be fair to say. I was probably—yeah. I was definitely in the groveling mode if you want to read my e-mail, to be honest.

Q. But the judge denied the motion to continue?

A. I wasn't here.

Q. I understand that, but your understanding—you were the manager of this case—that motion—

A. That is true.

Q. And so the case was going to proceed to trial, unless [the defendant] took some kind of deal?

A. Yes. I would say that's true."

¶ 18    Defense counsel stated that he was present at the defendant's sentencing hearing and that he believed the defendant was satisfied with the sentence, which was why no motion to withdraw the guilty plea was filed. After the defendant filed the *pro se* motion to withdraw, defense counsel stated that the defendant "certainly was having second thoughts." Defense counsel stated that the defendant never asked him about withdrawing his guilty plea and that there was no good faith basis to file one. Defense counsel also stated that he did not recall the defendant asking him to file a notice of appeal.

¶ 19    The State then called defense counsel's associate, Dennis Steeves, who testified that he appeared on behalf of the defendant on the day of trial to request a continuance. Plea counsel stated that he asked the judge for a continuance to discuss the State's counteroffer with the defendant, but that the request was denied since the case had been pending for almost two years. The matter proceeded to jury selection, and during jury selection, plea counsel stated that he was not aware of what the case involved, nor had he reviewed the file at all. After selecting the jury, plea counsel stated that he did review the file during a break for lunch. When questioned on whether he was prepared to try the case, plea counsel responded, "After reviewing the file, I felt that there was no triable issues, so I guess the answer would be no."

¶ 20    Upon further questioning, plea counsel stated as follows:

> "Q. Okay. But I guess, had this gone to trial do you think you would have been able to offer competent representation to [the defendant]?
>
> A. I could not see, based on my view of the police reports, any reasonable argument that I could have made to the jury that would have swayed them in [the defendant's] favor."

¶ 21    Plea counsel stated that he spoke with the defendant, who informed him of a witness, but that the defendant could not get in touch with that witness. Plea counsel testified that he then discussed the evidence with the defendant and advised the defendant to plead guilty since he

7

believed that the defendant would do better on a sentence to plead rather than proceeding to trial. Plea counsel testified that he had been practicing since 2001 and had tried several cases over the years.

¶ 22    Upon completion of arguments, the trial court indicated that the evidence and arguments had been heard and considered. In its ruling regarding the defendant's postconviction petition, the trial court stated as follows:

"[Plea counsel] comes down and doesn't know anything about the case, picks a jury, reads the file, and figures out there's nothing to know. He doesn't have any defense. There's no witnesses. The guy's confessed and the stuff's there.

So [plea counsel] probably wasn't the best circumstance to have a lawyer that didn't know the case show up the day of trial, but I don't know how in the world the outcome was going to be any different. He doesn't have any defense.

And so for that motion, the post-conviction petition is denied."

¶ 23    The defendant then indicated his desire to appeal, and this appeal followed. On appeal, the defendant raises the sole issue of whether the trial court erred in denying the defendant's postconviction relief where his attorneys admitted that they were unprepared when the case was called for trial, rendering the defendant's ensuing guilty plea involuntary.

¶ 24                                II. ANALYSIS

¶ 25    The Act (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in his or her original trial or sentencing hearing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). A postconviction proceeding is not an appeal from an underlying judgment, but rather a collateral attack on the judgment. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009). As a collateral proceeding, a postconviction

8

proceeding allows inquiry only into constitutional issues that were not, and could not have been, adjudicated in an appeal of the underlying judgment. *Id.*

¶ 26   The Act sets forth a three-stage process for postconviction proceedings. *People v. Little*, 2012 IL App (5th) 100547, ¶ 12. At the first stage, the trial court independently assesses a defendant's petition and may summarily dismiss the petition if the court determines that it is frivolous or patently without merit. *Id.* If not dismissed at the first stage, the petition advances to the second stage where counsel may be appointed, and the State may move to dismiss the petition. *Id.* At the second stage, the trial court must determine whether the petition contains sufficient allegations of a constitutional violation, and if a substantial showing is made, the petition proceeds to the third stage for an evidentiary hearing. *Id.*

¶ 27   In this matter, the defendant's petition proceeded to the third stage, and an evidentiary hearing was conducted on August 12, 2022. A defendant has the burden of proving a substantial constitutional violation at the third stage. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The trial court "may receive evidentiary proof via affidavits, depositions, testimony, or other evidence," at the third stage evidentiary hearing. *People v. Gerow*, 388 Ill. App. 3d 524, 527 (2009). The evidentiary hearing allows the parties to "develop matters not contained in the trial record and, thus, not before the appellate court." *People v. Lester*, 261 Ill. App. 3d 1075, 1078 (1994).

¶ 28   The trial court serves as the finder of fact at the evidentiary hearing and as such, it is the trial court's function to determine witness credibility, decide the weight to be given to the evidence, and to resolve evidentiary conflicts. *People v. Brown*, 2020 IL App (1st) 190828, ¶ 43. When a petition is advanced to the third stage and an evidentiary hearing has been conducted involving fact-finding and credibility determinations, we will not reverse a trial court's decision unless it is

9

manifestly erroneous. *Pendleton*, 223 Ill. 2d at 473. A trial court's ruling is manifestly erroneous if it contains an error that is clearly evident, plain, and indisputable. *People v. Hughes*, 329 Ill. App. 3d 322, 325 (2002).

¶ 29  We note that the defendant argues that this court should conduct a *de novo* review since the defendant's counsels both admitted under oath that they were not prepared for trial and, "thus the facts are undisputed and all that is required is the application of the law." We find this argument to be without merit. New evidence was presented at the hearing and regardless of the admissions of the defendant's counsels, the trial court was required to weigh the credibility of those witnesses, the weight to be given to the testimony, and resolve any conflicts between their testimonies and that of the defendant. The hearing involved numerous factual disputes that required fact-finding and credibility determinations by the trial court and accordingly, we will review the trial court's denial of the defendant's petition for manifest error.

¶ 30  Before proceeding with our analysis, however, we must first address the State's argument that the defendant has forfeited any claims of error because he voluntarily pleaded guilty and failed to timely file a motion to withdraw his guilty plea. Generally, a defendant waives all nonjurisdictional defenses or defects, including constitutional ones, by pleading guilty. *People v. Johnson*, 2021 IL App (1st) 152310, ¶ 21. The defendant cites *People v. Reed*, 2020 IL 124940, ¶ 51, wherein our supreme court held that a defendant who had pleaded guilty may still assert an actual innocence claim under the Act. The defendant argues that "if a guilty plea does not bar a claim of innocence, it surely cannot pre-empt a claim of ineffectiveness in the entry of the guilty plea." The *Reed* court, however, further held that in order to raise an actual innocence claim after a plea of guilty requires the defendant "to provide new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal." *Id.* at 49.

10

Here, the defendant only provided his own self-serving assertion that the drugs recovered were not his and provided no new, material, noncumulative evidence of actual innocence. Therefore, we find that the holding in *Reed* is not applicable in this matter.

¶ 31 The defendant also cites *Tollet v. Henderson*, 411 U.S. 258 (1973). In *Tollet*, the United States Supreme Court found as follows:

> "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advice he received from counsel was not within the standards set forth in McMann." (Emphasis added). *Id.* at 267;

see *McMann v. Richardson*, 397 U.S. 759, 771 (1970) ("[W]hether that advise was within the range of competence demanded of attorneys in criminal cases.").

¶ 32 Pursuant to *Tollet*, Illinois courts have allowed claims related to the voluntary and intelligent character of a guilty plea to be brought under the Act. See generally *People v. Hatter*, 2021 IL 125981, ¶¶ 23, 26; *People v. Brown*, 2017 IL 121681, ¶¶ 13, 26. Accordingly, any contentions of errors, such as the failure to disclose witnesses or conduct an investigation, which occurred prior to the plea proceedings, would be forfeited. The defendant's claim regarding the voluntary and intelligent character of his guilty plea, however, is not forfeited. Therefore, we will proceed with our analysis of this issue.

¶ 33    A challenge to a guilty plea that alleges ineffective assistance of counsel is subject to the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hatter*, 2021 IL 125981, ¶ 26. That is, to establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms. *People v. Cherry*, 2016 IL 118728, ¶ 24. An attorney's performance, in the context of a guilty plea challenge, is deficient if the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently. *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005).

¶ 34    In order to establish prejudice, a defendant who has pleaded guilty must show that there is a "reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial." *Id.* at 335. The question of whether counsel's deficient performance caused the defendant to plead guilty depends to a large extent on whether the defendant would likely have succeeded at trial. *Id.* at 336. "Stated differently, we must ask whether [the defendant] arguably would have been 'better off' rejecting the plea offer and insisting on a trial." (Internal quotation marks omitted.) *Hatter*, 2021 IL 125981, ¶ 30. As such, a defendant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *People v. Watkins*, 2019 IL App (4th) 180605, ¶ 31.

¶ 35    A self-serving statement, such as the defendant would not have pleaded guilty absent the advice of counsel, is insufficient to demonstrate the required prejudice. *People v. Rissley*, 206 Ill. 2d 403, 459 (2003). Instead, such a statement must be accompanied by either a claim of innocence or the articulation of any plausible defense that could have been raised had he proceeded to trial. *Id.* A defendant must satisfy both prongs of the *Strickland* test to prevail and the failure to establish

12

either prong precludes the finding of ineffective assistance of counsel. *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 36    Here, the defendant argues that he was denied effective assistance of counsel where both his defense counsel and plea counsel admitted under oath that they were unprepared to present a defense on the day of trial. As such, the defendant argues that he was coerced into entering into a plea of guilty since plea counsel had not conducted a proper investigation, was not aware of any available defenses, and could not have conducted an adequate assessment of the State's evidence in order to properly advise the defendant regarding a plea. Therefore, the defendant argues that plea counsel's performance was deficient and that his plea was not voluntarily and intelligently entered.

¶ 37    The defendant further argues that no specific showing of prejudice is required since defense counsel failed to subject the case to any meaningful adversarial testing. The defendant cites to *United States v. Cronic*, 466 U.S. 648 (1984), in support of his position that prejudice should be presumed. In *Cronic*, a companion case to *Strickland*, the Supreme Court set forth three exceptions to *Strickland* where prejudice may be presumed. *Id.* at 659-60. Those exceptions are (1) "the accused is denied counsel at a critical stage of his trial"; (2) counsel "fails to subject the prosecution's case to meaningful adversarial testing;" and, (3) where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.*

¶ 38    In discussing the failure to subject the case to any meaningful adversarial testing exception, the Supreme Court has characterized it as a "narrow exception" to *Strickland* that "infrequently" applies. *Florida v. Nixon*, 543 U.S. 175, 190 (2004). For this exception to apply, it is not enough that counsel failed to oppose the prosecution "at specific points" in the proceeding, but rather, "the

13

attorney's failure must be complete," in that counsel failed to oppose the prosecution throughout the proceeding as a whole. *Bell v. Cone*, 535 U.S. 685, 697 (2002).

¶ 39    It is not surprising, given these limitations, that this court could only locate two cases where our supreme court found *per se* prejudice for counsel's failure to subject the case to any meaningful adversarial testing. See *People v. Hattery*, 109 Ill. 2d 449, 458 (1985); *People v. Morris*, 209 Ill. 2d 137, 182 (2004), *overruled on other grounds by People v. Pitman*, 211 Ill. 2d 502 (2004). Both cases involved counsel's performance at trial, and in each case, defense counsel abdicated his responsibility by directly admitting the defendant's guilt. *People v. Caballero*, 126 Ill. 2d 248, 266 (1989).

¶ 40    The defendant does not cite any precedent where a court has determined that the exceptions set forth in *Cronic* are applicable where a defendant has pleaded guilty. That is not to say, nor should this decision be construed as holding, that the *Cronic* exceptions cannot be applied where a defendant has plead guilty. A defendant, however, would need to demonstrate that counsel's performance fell to a level that amounted to no representation at all throughout the proceeding as a whole. See generally *Bell*, 535 U.S. at 697.

¶ 41    In this matter, we do not find that plea or defense counsel's performance fell to such a level. Both defense counsel and plea counsel were experienced attorneys in criminal law. The State's evidence included the most detrimental evidence that could be placed in front of a jury, that is, the defendant's statement to law enforcement that the illegal drugs recovered were his. As the *Tollet* court noted:

> "The principal value of counsel to the accused in a criminal prosecution often
> does not lie in counsel's ability to recite a list of possible defenses in the abstract,
> nor in his ability, if time permitted, to amass a large quantum of factual data and

14

inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, [citation], or by contesting all guilt, [citation]. A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, such as unconstitutional grand jury selection procedures, might be factually supported." *Tollet*, 411 U.S. at 267-68.

¶ 42 While we find it atrocious that defense counsel would send an unprepared associate to represent the defendant on the day of trial, at least without an agreement from the State with regard to a continuance, plea counsel was an experienced criminal attorney with trial experience. Plea counsel testified that he discussed the evidence with the defendant and advised the defendant to plead guilty since he believed that the defendant would do better on a sentence to plead rather than proceeding to trial. Defense counsel represented the defendant for approximately 18 months prior to the plea and during that period, he testified that the goal had been to obtain the most favorable plea agreement considering the amount and nature of the evidence against the defendant. Although unprepared, plea counsel's advice to the defendant was consistent with the goal of the defense throughout defense's counsel representation of the defendant. Again, we are not condoning the appearance of an unprepared attorney on a day of trial, but given the specific facts of this case, we do not find that the plea or defense counsel's performance amounted to no representation

15

throughout the proceedings as a whole. Therefore, we find that the exception set forth in *Cronic* is not applicable in this matter and we will not presume prejudice.

¶ 43    As previously stated, in order to establish prejudice, a defendant who has pleaded guilty must show that there is a "reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial." *Hall*, 217 Ill. 2d at 335. Here, the defendant gave no indication that he wanted to proceed to trial, nor any indication that he informed counsel that he wanted to plead not guilty and proceed to trial. Defense counsel testified that, given the evidence, the course of action was to work for a favorable plea and there is nothing to indicate that the defendant did not want a plea agreement. In fact, the defendant testified that he had wanted to take an earlier plea offer from the State, but was unable to do so at the time given his other pending criminal cases. Although the defendant stated that the drugs were not his, he did not put forth a claim of actual innocence supported with new, material, noncumulative evidence within his petition, nor did he articulate of any plausible defense that could have been raised had he proceeded to trial.

¶ 44    The defendant testified that he wanted to withdraw his guilty plea because "we didn't have time to prepare" and "was kind of rushed through the whole process" but he did not state that he wanted to proceed to trial. Given the State's evidence, we cannot arguably find that the defendant would have been "better off" rejecting the plea offer and insisting on a trial. Although the defendant argues that such a determination cannot be made since defense counsel failed to conduct any investigation, defense counsel testified that there was no good faith basis to challenge the defendant's confession, and it would have likely been played to a jury. The defendant was facing additional charges and a maximum sentence of 80 years if convicted at trial. By pleading guilty, the defendant obtained the dismissal of the additional charges and also a 40-year cap on

16

incarceration. The resulting sentence of 15 years' incarceration was well below the potential 80-year sentence that the defendant could have received if he had proceeded to trial.

¶ 45 We also note that the defendant was admonished by the trial court that he was not required to plead guilty and could have, if he so desired, proceeded to trial the following day. The defendant testified that, at the plea hearing, he informed the trial court that "I felt coerced, like I just was frightened." The report of proceedings, however, contradicts that testimony. The defendant verbally acknowledged all of the trial court's admonishments, including his right to plead not guilty and proceed to trial.

¶ 46 As such, we find that the defendant has failed to establish prejudice in the context of a guilty plea challenge. Since both prongs of the *Strickland* test must be satisfied, we find that the defendant has failed to demonstrate ineffective assistance of counsel. Accordingly, we cannot say that the trial court's judgment dismissing the defendant's petition was an error that is clearly evident, plain, and indisputable. Thus, we find that the trial court's judgment was not manifestly erroneous and affirm the trial court's judgment denying the defendant's petition.

¶ 47 III. CONCLUSION

¶ 48 Based on the foregoing, we affirm the judgment of the trial court of Macon County denying the defendant's postconviction petition after a third-stage evidentiary hearing where the defendant failed to demonstrate prejudice due to ineffective assistance of counsel.

¶ 49 Affirmed.

17